**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 23-17590-EPK |
| MV REALTY PBC, LLC *et al.,* | CHAPTER 11 |
| Debtors. | (Joint Administration Pending) |

**_EMERGENCY_ MOTION OF DEBTORS-IN-POSSESSION FOR**
**AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION**
**WAGES, COMMISSIONS, TAXES AND OTHER REQUIRED WITHHOLDINGS,**
**AND TO PAY AND OFFER CONTINUED BENEFITS PURSUANT**
**TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE**

> **The Debtors respectfully request that the Court conduct an emergency hearing on this Motion. Absent payment of wages and other benefits, the Debtors run the risk of irreparable harm to their businesses.**

Each of the Debtors,[1] by and through their proposed undersigned counsel, and pursuant to the provisions of 11 U.S.C. §§ 105 and 363, file this *Emergency Motion of the Debtor-in-Possession for an Order Authorizing the Debtor to Pay Prepetition Wages, Commissions, Taxes*

---

[1] The last four digits of the Debtors' federal tax identification numbers are: *MV Realty, PBC LLC (6755), MV Realty Holdings, LLC (3483),MV Receivables II, LLC (9368), MV Receivables III, LLC, MV Realty PBC, LLC (Pennsylvania) (7301), MV Realty of South Carolina, LLC (7322), MV Realty of North Carolina, LLC (3258), MV of Massachusetts, LLC (0864), MV Realty of Illinois, LLC (8814), MV Realty of Arizona, LLC (2725), MV Realty of Connecticut, LLC (8646), MV Realty of Georgia, LLC (6796), MV Realty of New Jersey, LLC (5008), MV Realty of Washington, LLC (7621), MV Realty of Maryland, LLC (9945), MR Realty of Virginia, LLC (2129), MV Realty of Tennessee, LLC (7701), MV Realty of Wisconsin, LLC (2683), MV Realty of Nevada, LLC (0799), MV Realty of Oregon, LLC (3046), MV Realty of Utah, LLC (4543), MV Realty of Minnesota, LLC (1678), MV Realty of Indiana, LLC (3566), MV Realty of Missouri, LLC (6503), MV Homes of New York, LLC (2727), MV Realty of Idaho, LLC (8185), MV Realty of Alabama, LLC (6462), MV Realty of Colorado, LLC (1176), MV Realty of Oklahoma, LLC \*8174), MV Realty of Louisiana, LLC (3120), MV Realty of Kansas, LLC (2304), MV Realty of Kentucky, LLC (2302), MV Realty of California (7499), MV Realty of Texas, LLC (7182), MV Realty of Michigan, LLC (5280), and MV Realty of Ohio, LLC (0728).*

*and Other Required Withholdings, and to Pay and Offer Continued Benefits, and (II) Ratifying*
*Payment of Prepetition Wages, Commissions, Taxes and Other Required Withholdings, and*
*Payment of Continued Benefits, Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code*
(the "<u>Motion</u>"), and in support thereof, state as follows:

### BRIEF STATEMENT OF RELIEF REQUESTED

1.      By this Motion, the Debtors respectfully request that the Court (a) authorize the payment of pre-petition wages, commissions, taxes and other required withholdings, (b) authorize payment of, and continued benefits, and (c) authorize company reimbursement policy and procedures, in accordance with the proposed order attached hereto as **Exhibit "A"**.

2.      Approval of the instant Motion is necessary and critical to the Debtors' ongoing business operations.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein is 11 U.S.C. §§ 105(a) and 363(b).

### BACKGROUND

*<u>A.</u>*      *<u>Filing</u>*

1.      On September 22, 2023, the Debtors each filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. The Debtors are in possession of their assets and operating their businesses as debtors-in-possession pursuant to the authority of 11 U.S.C. §§ 1107 and 1108.

**B.**     ***Organizational Structure***

2.     Debtor, MV Realty Holdings, LLC ("Holdings") is a Florida limited liability company and the sole owner of Debtor, MV Realty PBC, LLC a Florida limited liability company ("PBC"), and MV Brokerage, LLC ("Brokerage").

3.     PBC is the sole owner of the following debtors: (a) MV Realty Receivables II, a Florida limited liability company ("Receivables II"); (b) MV Realty Receivables III, a Florida limited liability company ("Receivables III"); (c) MV Realty of California, a California corporation ("California"); and (d) thirty-one (31) additional debtor subsidiaries (collectively, with California, the "MV Realty Subs"), each of which is a limited liability company organized under the laws of the states of Pennsylvania, South Carolina, North Carolina, Massachusetts, Illinois, Arizona, Connecticut, Georgia, New Jersey, Washington, Maryland, Virginia, Tennessee, Wisconsin, Nevada, Oregon, Utah, Minnesota, Indiana, Missouri, New York, Idaho, Alabama, Colorado, Oklahoma, Louisiana, Kansas, Michigan, Kentucky, Texas and Ohio. Each of the MV Realty Subs is incorporated or organized under the laws of the respective states as follows: "*MV Realty of [state], LLC*" (with the exception of New York ("MV Homes of New York, LLC") and Massachusetts, ("MV of Massachusetts, LLC")).

4.     Brokerage is the sole owner of the following (collectively, the "MV Brokerage Subs"): (a) thirty-three (33) separate subsidiaries, each of which is a limited liability company organized under the laws of the states of Florida, Pennsylvania, South Carolina, North Carolina, Massachusetts, Illinois, Arizona, Connecticut, Georgia, New Jersey, Washington, Maryland, Virginia, Tennessee, Wisconsin, Nevada, Oregon, Utah, Minnesota, Indiana, Missouri, New York, Idaho, Alabama, Colorado, Oklahoma, Louisiana, Kansas, Michigan, Kentucky, Texas and

Ohio; and (b) one subsidiary incorporated under the laws of the state of California. For the most part, the MV Brokerage Subs each operate as "*MV Brokerage of [state], LLC.*"

## C.    *Business Operations*

7.    PBC is the servicing entity, which operates primarily from premises located at 815 Broken Sound Parkway, Boca Raton, Florida 33487. Currently, PBC has 79 full-time employees, and also uses the services of 156 independent contractors, who receive 1099s.

8.    PBC was founded in 2014 and initially operated as a traditional real estate brokerage firm. In October 2018, PBC began focusing its efforts on developing and marketing a unique product to residential homeowners.

9.    In or around October 2018, PBC implemented the "Homeowner Benefit Program" (the "HBP"). As part of the HBC, the MV Realty Subs enter "Homeowner Benefit Agreements" (the "HBA") with residential homeowners. The HBA is not a listing agreement, but is a forward listing contract pursuant to which the MV Realty Subs pay an upfront cash payment to homeowners in exchange for the exclusive right to list a homeowner's home if and when the homeowner decides to sell their home. The term of the HBA is forty (40) years subject to certain early termination events.

10.    In accordance with an HBA, a selling homeowner lists their home with the applicable MV Realty Sub, which then lists and sells the home for a standard commission, including any participating broker commission. In the event the home does not sell within six (6) months, the homeowner may terminate the HBA at no cost and without penalty. The HBA is not a listing agreement.

11.    In the event a homeowner breaches the HBA, which results in an early termination of the HBA, the MV Realty Subs are typically entitled to a termination fee equal to

three percent (3%) of the greater of (a) the fair market value of the home at the time the HBA is executed, and (b) the fair market value at the time of breach or early termination.

12.     Additionally, the MV Realty Subs reserves the right to record a memorandum ("Memorandum"), or other similar notice, of the HBA in the public records in the county in which the real estate is located. Although the HBAs are governed by the laws of the state in which the HBA is entered, the terms of the HBAs and Memoranda are substantively consistent from state to state.

13.     At the present time, the MV Realty Subs are parties to approximately 34,000 HBAs.

**D.**     **_Financing – Goodwood I_**

14.     On or about February 11, 2020, MV Receivables I, LLC ("Receivables I"), a wholly owned subsidiary of PBC, entered into a credit agreement (the "Goodwood I Credit Agreement") with Goodwood Fund, as the initial lender ("Goodwood Fund" and, together with other lenders under the Goodwood I Credit Agreement, the "Goodwood I Lenders"), and Goodwood Inc., as agent ("Goodwood Inc."). The parties also executed, among other documents, a Security Agreement (the "Goodwood I Security Agreement" and, collectively with the Goodwood I Credit Agreement and other related documents, the "Goodwood I Loan Documents").

15.     PBC and Receivables I also entered a Purchase and Contribution Agreement (the "Purchase Agreement") pursuant to which Receivables I agreed to purchase HBAs acquired with amounts advanced under the terms of the Goodwood I Credit Agreement. The advance rate is typically sixty percent (60%) of discounted eligible receivables. The amount of $10,000,000.00 has been advanced under the Goodwood I Credit Agreement.

16.     Under the Goodwood I Security Agreement, Receivables I granted a security interest in and to its assets, including, without limitation, certain HBAs, accounts, receivables, and general intangibles, in favor of Goodwood Inc., as agent for the Goodwood I Lenders. PBC signed a limited guarantee of amounts owed by Receivables I under the Goodwood I Credit Agreement.

### E.     *Financing – Monroe Capital*

17.     On or about July 28, 2021, Receivables II entered into a $40,000,000.00 senior secured delayed draw credit facility (the "Monroe Credit Facility") with Monroe Capital Management Advisors, LLC, as administrative and collateral agent ("Monroe Capital"), and the lenders under the Monroe Credit Facility (collectively, the "Monroe Lenders"). Receivables II and Monroe Capital executed, among other documents, a Credit Agreement (the "Monroe Credit Agreement"), Security Agreement (the "Monroe Security Agreement", and Pledge Agreement (the "Monroe Pledge Agreement" and, collectively with Monroe Credit Agreement, the Monroe Security Agreement, and related other agreements, the "Monroe Loan Documents").

18.     The Monroe Lenders have advanced the amount of $40,000,000.00 to Receivables II under the Monroe Credit Facility, the proceeds of which were to be used to acquire eligible receivables in accordance with the Monroe Credit Agreement and to fund operations and other related expenses.

19.     Under the Monroe Credit Facility, PBC, certain of the MV Realty Subs (New Jersey, Connecticut, Illinois, Massachusetts, North Carolina, South Carolina, and Georgia) (collectively, and excluding PBC, the "Initial MV Realty Guarantors") initially guaranteed the obligations of Receivables II. The Monroe Credit Facility was later guaranteed by subsequent

MV Realty Subs, who organized and became parties to the Monroe Credit Facility and Monroe Loan Documents as the operation expanded.

20.     In accordance with the Monroe Pledge Agreement, (a) Holdings pledged its equity interest in in PBC, and (b) PBC pledged its membership interests in the MV Realty Subs, in favor of Monroe Capital, as collateral agent. All membership interests are uncertificated.

21.     In accordance with the Monroe Security Agreement, Receivables II, PBC, and the Initial MV Realty Guarantors, as well as any other MV Realty Subs who later joined the Monroe Credit Facility and Monroe Loan Documents, granted Monroe Capital a security interest in their assets, including, without limitation, accounts, documents, general intangibles, investment property, receivables, and receivables relating to the HBAs.

22.     Generally speaking, (a) the MV Realty Subs would entered into HBAs with homeowners, thus giving the MV Realty Subs the exclusive right to list homes in the event a homeowner ever decide to sell their home, (b) the receivables under the HBAs were to be sold or otherwise assigned to MV Receivables II, and (c) Monroe Capital then advanced at a rate of forty-five percent (45%) of the net present value of eligible receivables under the HBAs.

**_F._**     **_Consent and Confirmation Agreement_**

23.     In or about July 2021, Monroe, Goodwood Inc., PBC and Receivables I entered into the Acknowledgement and Confirmation Agreement (the "Confirmation Agreement"), which was, essentially, an inter-creditor agreement, pursuant to which Monroe and Goodwood Inc. acknowledged and consented to the other's respective rights under the Monroe Capital Loan Documents and the Goodwood I Loan Documents, respectively.

**_G._**     **_Financing - Goodwood II_**

24.     On November 4, 2022, MV Receivables III, LLC ("<u>Receivables III</u>"), Goodwood MV Realty LP, as the initial lender ("<u>Goodwood MV</u>" and, together with any other related lenders, the "<u>Goodwood II Lenders</u>"), and Goodwood, Inc. ("<u>Goodwood Inc.</u>"), as agent, entered into a Credit Agreement (the "<u>Goodwood II Credit Agreement</u>"). The parties also executed, among other documents, a Security Agreement (the "<u>Goodwood II Security Agreement</u>" and, collectively with the Goodwood II Credit Agreement and other related documents, the "<u>Goodwood II Loan Documents</u>").

25.     In accordance with the Goodwood II Credit Agreement, Receivables IIII agreed to purchase HBAs acquired with amounts advanced under the terms of the Goodwood II Credit Agreement. The advance rate was approximately sixty percent (60%) of the net present value of eligible receivables under the HBAs. The amount of $4,500,000.00 has been advanced.

26.     Under the Goodwood II Security Agreement, Receivables III granted Goodwood Inc. a security interest in and to its assets, including, without limitation, the HBAs, accounts, receivables, and general intangibles.  MV Brokerage signed a limited guarantee of amounts owed by Receivables III under the Goodwood II Credit Agreement.

**_H._**     **_Other Financing_**

27**.**     In February 2023, Holdings executed senior notes with eight (8) shareholders of Holdings, who advanced a total of $12,968,000.00 (collectively, the "<u>Shareholder Notes</u>"). There is approximately $14,103,144.11 outstanding, including accrued interest, under the Shareholder Notes. The proceeds borrowed were used to fund operations.

28.     Additionally, in 2021 and 2022, Holdings executed two (2) rounds of convertible notes, one of which has since converted. The later round, which was in the total amount of $6,070,000.00, has not been converted.

### I.     *Assets and Secured Obligations*

29.     Monroe is currently owed approximately $40,000,000.00, while the Goodwood I Lenders and Goodwood II Lenders are owed approximately $7,408,275.82 and $4,460,000.00, respectively. As of September 5, 2023, the net present value of the collateral securing the foregoing obligations is (a) $89,315,255.01 (Monroe), (b) $12,656,966.30 (Goodwood I), and (c) $6,106,069.54 (Goodwood II). Holdings has additional HBAs with an aggregate net present value of approximately $12,861,536.97. Accordingly, the total net present value of HBAs exceeds $120,000,000.00.

### EVENTS LEADING TO BANKRUPTCY

30.     Since November 29, 2022, the states of Florida, Pennsylvania, Massachusetts, Ohio, North Carolina, New Jersey, and Indiana commenced actions against certain of the MV Realty Subs (collectively, the "State Actions"). PBC is a named defendant in the State Actions commenced by the states of Florida, Pennsylvania, New Jersey, North Carolina, Massachusetts, and Indiana. Other individual officers and licensed real estate brokers working in connection with the HBAs are named in nearly all State Actions. The allegations asserted in the State Actions range from telemarketing violations to unfair or deceptive trade practices.

31.     It is alleged in the State Actions that the filing of the memorandum, which provides constructive notice to the public of the existence of the HBA and its terms, unfairly or deceptively interferes with the homeowner's ability to sell the home.

32.     The Debtors contend that the memorandum, which is separately signed by each homeowner under the HBA, is neither deceptive nor unfair. Rather, the memorandum is filed in accordance with the applicable law of each state and serves the purpose intended by the applicable law of each state by providing public notice of the HBA.

33.     Moreover, in several instances, it is alleged in the State Actions that the Debtors made improper telephone solicitations to prospective customers without their consent. To date, however, the Debtors have not had any meaningful opportunity to present in court the vast number of lawfully obtained consents from prospective homeowners authorizing these very solicitations.

34.     It has also been alleged in many of the State Actions that the Debtors' sales and marketing practices "prey" upon customers who are elderly or of diminished financial means. However, the Debtors strenuously disagree with such allegations as being unsupported by fact. The facts are that (a) the typical homeowner in an HBA owns a home with an average value exceeding $300,000, and (b) the average age of homeowners under HBAs is 55 years old (and 72% of homeowners are under age 65).  By comparison, the American Housing Survey 2021, based on US Census Bureau data, indicates that only 67.3% of homeowners in the country are under the age of 65. Thus, the homeowners under the HBAs are proportionally younger than a typical cross-section of homeowners overall in the United States.

35.     It is alleged or implied in the State Actions that a very significant portion of the Debtors' customers are aggrieved and have complained to state consumer protection authorities. However, this allegation is inaccurate and unsupported by the facts. For example, in North Carolina, over the 16-month period prior to the commencement of the State Action, the state consumer protection authorities made the Debtors aware of only twelve (12) consumer

complaints (out of a total of 2,100 HBAs in North Carolina) regarding allegedly deceptive conduct by the Debtors.  These complaints came mostly from customers who alleged deception or unfairness by the Debtors only after the homeowner had breached the HBA. In contrast, the Debtors, in a mere 45-day period, following the commencement of the State Action in North Carolina, obtained at least 250 sworn statements from North Carolina homeowners attesting that they understood the key terms and elements of the HBA.

36.    It is also well worth noting that the Debtors previously engaged national and well-recognized local law firms prior to implementing the HBP in each state, who advised as to compliance with state and other applicable laws with respect to the sales and marketing of the HBP and HBAs, as well as with respect to the terms and conditions of the HBAs and related agreements.

37.    Accordingly, the defendants vigorously oppose the State Actions and contend that the HBAs comply with all applicable laws.

38.    Finally, there are other actions that have been commenced by real estate regulatory commissions that include both the MV Brokerage Subs and the individual licensed real estate agents and brokers in connection with their work on the HBAs.

39.    In defending against the State Actions and other regulatory matters, the Debtors have spent and incurred millions of dollars in legal fees, and the Debtors' personnel have devoted substantial time in assisting defense counsel.

40.    The Debtors commenced these Chapter 11 proceedings to protect and maximize the value of their assets and for the purpose of implementing one or more strategies aimed at alleviating or otherwise minimizing the financial strain of the State Actions. The Debtors also

intend to protect the assets from any adverse creditor action, and otherwise preserving estate assets for the benefit of all creditors.

## RELIEF REQUESTED

41.    By this Motion, the Debtors seek entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code (a) authorizing payment of pre-petition wages, commissions, taxes, and other required withholdings, (b) authorizing payment of, and continued benefits, and (c) authorizing company reimbursement policy and procedures, in accordance with the proposed order attached hereto as **Exhibit "A"**.

## FACTS RELEVANT TO RELIEF REQUESTED

42.    The Debtors currently employ 80 employees consisting of agents, brokers, servicing, finance, accounting, marketing, sales, IT, and management. The Debtors also use the services of approximately 156 personnel, who are issued 1099s. These are primarily real estate agents, who operate, for the most part, under their own entities and are paid only upon real estate sales. Notwithstanding the Debtors' employment of 80 employees, not all employees are paid on a regular basis since non-broker agents are only paid following the closing of sales.

*A.*    *Payroll and Commissions*

43.    The Debtors pay employees twice per month (15th and last day of the month). Employees are staffed through TriNet and payroll is processed through TriNet. Trinet also pays payroll taxes. In processing payroll and taxes, TriNet uses its own EIN. TriNet then invoices the Debtors. All payroll, including payroll taxes, is funded by PBC. Payments for those issued 1099s occur through ADP and is funded by PBC.

44.    The most recent payroll period ran from September 1, 2023, through September 15, 2023, for salaried employees (slightly different for hourly employees and agents) and was

paid on September 15, 2023 (funds were sent to TriNet on September 14, 2023, and to ADP on September 15, 2023).  The next payroll for salaried employees is the period September 16, 2023, through September 30, 2023, and will be payable on September 29, 2023 (the "<u>September 30 Payroll</u>"). For hourly employees and agents, the next period runs from September 9, 2023, and September 11, 2023, respectively, through September 25, 2023, and will be paid on September 29, 2023 (the "<u>September 29 Payroll</u>"), which provides time to confirm commissions received and to approve hours prior to submitting details for processing. As these cases were filed on September 22, 2023, a small portion of the September 30 Payroll and September 29 Payroll occurs post-petition. No employee exceeds the priority amount under section 507(a)(4) of the Bankruptcy Code, inclusive of salary, commissions, and benefits.

45. **Exhibit "B"** represents the Debtor's most recent payroll, including withholdings.

**B.     Insurance**

46.     Additionally, the Debtors offer health, vision, and dental insurance to full-time employees, including salaried, hourly, and agents, only on an "opt-in" basis. The Debtors cover approximately fifty-percent (50%) of the cost, while employees pay the remaining portion. Dependent and family coverage is available but paid for entirely by employees. TriNet also offers supplemental insurance which is paid for entirely by employees. TriNet collects the employee portion, but remits the funds to PBC, who then pays the insurance premiums. Any insurance deductions are also disclosed on **Exhibit "B".**

**C.     Paid Time Off**

47.     Full-time employees are afforded paid time off ("<u>PTO</u>") at the rate of thirteen (13) days per year, which is pro-rated and accrued per paycheck.  Three (3) unused days of PTO may be rolled over to the next year; otherwise, any additional PTO is forfeited.

**D.      Reimbursement**

48.    Occasionally, but not often, an employee or agent will incur an expense on a personal credit card.  Requests for reimbursement and receipts are generally provided to a manager, who, if approved, will send the request for reimbursement to accounting.

<u>**BASIS IN SUPPORT OF RELIEF REQUESTED**</u>

49.    Pursuant to 11 U.S.C. § 507(a)(4), the Debtors' employees' claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within one hundred and eighty days before the Petition Date are afforded unsecured priority status to the extent of $15,150.00 per employee.  Furthermore, 11 U.S.C. § 363(b)(1) provides that, "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1).

50.    Section 105(a) of the Bankruptcy Code provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking an action on making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

51.    The Debtors' employees are essential to the success of the Debtors' business. All employees were previously employed by the Debtors and, therefore, are familiar with the Debtors' business operations.  Thus, the Debtors can avoid any costs associated with any training of new employees.

52.    Recognizing that the payment of certain prepetition claims, including those of employees is often critical to a debtor's efforts in Chapter 11, Courts have frequently used their authority under 11 U.S.C. § 105(a) to authorize debtors-in-possession to pay prepetition claims,

particularly prepetition wage, salary, expense and benefit claims. See *In re Columbia Gas System, Inc.*, 171 B.R. 189 (Bankr. D. Del. 1994) (continued operation of debtor's business must depend on prepayment); In re *Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (authorizing Eastern Air Lines, Inc. to pay its current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims and relying on equitable powers under 105(a) to effectuate a restructuring of its finances to provide jobs for its employees) (citing H.R. Rep. No. 595, 95th Cong. 1st Sess. 16 (1977)).

53.     Retaining employees is critical to any successful reorganization (or to maintaining operations in order to maximize value) and, thus, the payment of prepetition wages, salaries and benefits falls under the "necessity of payment" doctrine, first enunciated by the Supreme Court in *Miltenberger v. Logansport Rv. Co.*, 106 U.S. 286 (1882). Under that doctrine, a bankruptcy court can and should permit a reorganizing debtor to make post-bankruptcy payments on prebankruptcy claims when payment is necessary to effectuate a successful reorganization. *See also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus"). There can be little doubt that the employees are critical to the Debtor's efforts in Chapter 11.

54.     The Debtors also seek authorization to pay all (if any) state, federal and other withholdings relating to prepetition periods, including but not limited to, all Social Security, FICA, federal and state income taxes, garnishments and health care payments, if applicable.

55.     The failure to make such payments may subject the Debtor and its officers to state or federal liability. *See DuCharmes & Co. v. Michigan (In re DuCharmes)*, 852 F.2d 194 (6th

Cir. 1988) (noting the special liabilities for failure to pay "trust fund taxes"); *Begier v. City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its Employees wages created trust relationship between debtor and city for payment of withheld taxes).

56.     Because such funds are not property of the Debtors' estate, the funds are not subject to the normal bankruptcy prohibitions against payment. See *Begier v. IRS*, 496 U.S. 53 (1990) (debtor's payment of employee withholding for federal income and FICA taxes not a preferential transfer because withholding held in trust for taxing authority and not a part of the debtor's estate).

57.     Courts in other cases have routinely granted Chapter 11 debtors the same or substantially similar relief to that requested in this Motion. *See, e.g.. In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing debtor-in-possession to pay prepetition employee wages and benefits, and health, life and workers' compensation insurance premiums).

58.     This Court may permit payments on prepetition claims when vital to the reorganization of a Chapter 11 debtor and where the payment of the prepetition debt creates "the greatest likelihood of … payment of creditors in full or at least proportionately." *See In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1998)(quoting I*n re Chateaugav Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987). It is widely recognized that maintaining employee morale and preventing significant employee turnover are vital to a debtor's reorganization, and, consequently, courts have routinely granted the type of relief sought by the Debtor under its Motion. Courts have repeatedly recognized the importance of a debtor's employees to its reorganization and the severe harm to employees that can arise if motions such as this one are not granted. *See also In re Braniff. Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla.

1998) (approving payment of prepetition employee wage claims due to the vital role the employees play to the debtor's reorganization); *In re US Airways Group, Inc.*, Chapter 11 Case No. 02-83984 (Bankr. E.D. Va. August 12, 2002) (Mayer, J.) (Order Authorizing the Debtor to Pay Prepetition Salaries, Wages, and Benefits).

**WHEREFORE,** the Debtors respectfully request entry of an order (a) granting this Motion in the form attached hereto as **Exhibit "A,"** (b) authorizing the pre-petition portion of the September 29 Payroll and September 30 Payroll, (c) authorizing continued benefits, including, without limitation, accrued PTO in 2023, and (d) authorizing company reimbursement policies, as well as granting such other and further relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 24th day of September 2023.

**SEESE, P.A.**
*Proposed Attorneys for Debtor-in-Possession*
101 N.E. 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone: (954) 745-5897


By: _____ *s/Michael D. Seese* _____
        Michael D. Seese, Esq.
        Fla. Bar No. 997323

## <u>CERTIFICATE OF EXIGENT CIRCUMSTANCES</u>

**I HEREBY CERTIFY** that an emergency hearing has been requested, since the relief requested may be critical to the administration of this estate and to the Debtors' business operations.

**SEESE, P.A.**
*Proposed* Attorneys for Debtor-in-Possession
101 N.E. 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone No.: (954) 745-5897
mseese@seeselaw.com

By: _____***s/Michael D. Seese***_____
        Michael D. Seese, Esq.
        Fla. Bar No. 997323

**EXHIBIT A**

*Proposed Order*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 23-17590-EPK |
| MV REALTY PBC, LLC *et al.,* | CHAPTER 11 |
| Debtors. | (Joint Administration Pending) |

**ORDER GRANTING**
***EMERGENCY* MOTION OF DEBTORS-IN-POSSESSION FOR**
**AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION**
**WAGES, COMMISSIONS, TAXES AND OTHER REQUIRED WITHHOLDINGS,**
**AND TO PAY AND OFFER CONTINUED BENEFITS PURSUANT**
**TO SECTIONS 105(a) AND 363(b) OF THEBANKRUPTCY CODE**

**THIS CAUSE** came before the Court on _____ upon the scheduled

emergency hearing (the "Hearing") on the *Emergency Motion of Debtors-in-Possession for an*

*Order Authorizing the Debtors to Pay Prepetition Wages, Commissions, Taxes and Other*

*Required Withholdings, and to Pay and Offer Continued Benefits Pursuant to Section 105(a) and*

*363(b) of the Bankruptcy Code* (the "Motion")[1] [ECF No. _____], and the Court, having reviewed the file, having heard the presentation of counsel, having further noted that no wage to be paid to any employee exceeds the priority amount under 11 U.S.C. § 507(a)(4)(A), having determined that good and sufficient cause exist in support of relief on an emergency basis and that no further notice or hearing is necessary, and the Court being otherwise fully advised in the premises, it is

**ORDERED** as follows:

1.      The Motion is **GRANTED** as provided herein.

2.      The Debtors are authorized to pay the pre-petition portion of the September 29 Payroll and September 30 Payroll. The Debtors are also authorized to continue providing insurance and other benefits, as well as continuing with the Debtors' employee reimbursement policy, as described in the Motion.

3.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

Submitted by:

Michael D. Seese, Esq.
Seese, P.A.
101 N.E. 3rd Avenue, Suite 1500
Ft. Lauderdale, FL 33301
Telephone No.: (954) 745-5897
mseese@seeselaw.com

Copies to:

Michael D. Seese, Esq., who is directed to serve a copy of this Order upon all non-registered users or registered users who have yet to appear electronically in this case and file a conforming certificate of service.

---

[1] Unless defined in this Order, defined terms shall have the meanings ascribed to such terms in the Motion.

# EXHIBIT B

*TriNet and ADP Payroll Report*

Payroll Register Excel with Employer Charges
Company Name : MV Realty PBC, LLC
**09/15/23 Payroll - TriNet W2**
Run Date : 09/24/2023 03:23:07 PM

| Employee ID | Pay End Date | Gross Wages - Totals | Taxes - EE - Totals | Deductions - EE - Totals | Health Benefits - EE - Totals | Net Pay | Taxes - ER - Totals | Workers Comp Fee - Totals | Returned Deductions - Totals | Fees - Totals | Total Client Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 09/15/2023 | $0.00 | | | | $0.00 | | | | $231.23 | $231.23 |
| 00010376795 | 09/10/2023 | $2,345.83 | $382.54 | | | $1,954.79 | $179.46 | $6.77 | $0.00 | $32.50 | $2,564.56 |
| 00010382079 | 09/10/2023 | $3,021.12 | $694.29 | | | $2,326.83 | $275.53 | $8.06 | $0.00 | $32.50 | $3,337.21 |
| 00010103022 | 09/10/2023 | $3,250.00 | $248.62 | | | $3,001.38 | $248.62 | $9.75 | $0.00 | $32.50 | $3,540.87 |
| 00010102986 | 09/15/2023 | $27,291.67 | $8,650.68 | $374.67 | | $18,266.32 | $2,059.15 | $81.88 | ($374.67) | $32.50 | $29,090.53 |
| 00010357040 | 09/15/2023 | $1,459.00 | $300.45 | | | $1,158.55 | $111.62 | $10.24 | $0.00 | $32.50 | $1,613.36 |
| 00010441017 | 09/15/2023 | $2,083.33 | $208.96 | | | $1,874.37 | $159.38 | $6.25 | $0.00 | $32.50 | $2,281.44 |
| 00010346948 | 09/15/2023 | $3,250.00 | $248.63 | | | $3,001.37 | $248.63 | $4.84 | $0.00 | $32.50 | $3,535.97 |
| 00010201330 | 09/15/2023 | $2,500.00 | $532.02 | | | $1,967.98 | $202.50 | $8.23 | $0.00 | $32.50 | $2,743.23 |
| 00010309961 | 09/15/2023 | $2,172.00 | $355.56 | | | $1,816.44 | $231.33 | $3.93 | $0.00 | $32.50 | $2,439.76 |
| 00010354586 | 09/15/2023 | $1,666.67 | $222.47 | $135.47 | $16.90 | $1,291.83 | $117.14 | $4.20 | ($135.47) | $32.50 | $1,685.04 |
| 00010252133 | 09/15/2023 | $5,416.67 | $1,449.98 | $158.45 | | $3,808.24 | $402.25 | $32.77 | ($158.45) | $32.50 | $5,725.74 |
| 00010102976 | 09/15/2023 | $2,000.00 | $176.13 | $149.05 | $20.06 | $1,654.76 | $141.60 | $9.16 | ($149.05) | $32.50 | $2,034.21 |
| 00010186973 | 09/10/2023 | $3,308.60 | $463.70 | $56.03 | | $2,788.87 | $248.81 | $9.39 | ($56.03) | $32.50 | $3,543.27 |
| 00010406080 | 09/15/2023 | $2,000.00 | $515.82 | $172.68 | $35.29 | $1,276.21 | $175.85 | $9.44 | ($24.26) | $32.50 | $2,193.53 |
| 00010380398 | 09/15/2023 | $3,125.00 | $562.01 | $141.89 | $8.05 | $2,413.05 | $228.20 | $9.38 | ($141.89) | $32.50 | $3,253.19 |
| 00010103023 | 09/15/2023 | $5,833.33 | $1,320.69 | $354.06 | | $4,158.58 | $419.16 | $17.50 | ($354.06) | $32.50 | $5,948.43 |
| 00010377870 | 09/15/2023 | $3.70 | $0.28 | | $3.42 | $0.00 | $0.28 | $0.01 | $0.00 | $32.50 | $36.49 |
| 00010224365 | 09/15/2023 | $4,806.67 | $982.80 | | | $3,823.87 | $367.70 | $14.42 | $0.00 | $32.50 | $5,221.29 |
| 00010382342 | 09/15/2023 | $1,800.00 | $248.39 | $136.79 | $35.33 | $1,379.49 | $127.22 | $2.68 | ($136.79) | $32.50 | $1,825.61 |
| 00010290835 | 09/10/2023 | $922.35 | $105.10 | | | $817.25 | $70.57 | $2.77 | $0.00 | $32.50 | $1,028.19 |
| 00002631777 | 09/15/2023 | $8,333.33 | $2,201.28 | $141.78 | | $5,990.27 | $626.65 | $25.00 | ($141.78) | $32.50 | $8,875.70 |
| 00010272548 | 09/15/2023 | $7,770.65 | $2,002.62 | $136.79 | $1.00 | $5,630.24 | $583.99 | | ($136.79) | $32.50 | $8,250.35 |
| 00010436966 | 09/15/2023 | $3,915.20 | $474.07 | $492.48 | $73.46 | $2,875.19 | $261.84 | $3.52 | ($492.48) | $32.50 | $3,720.58 |
| 00010105500 | 09/15/2023 | $1,800.00 | $326.15 | $143.95 | $7.08 | $1,322.82 | $126.68 | $8.03 | ($143.95) | $32.50 | $1,823.26 |
| 00010103011 | 09/15/2023 | $3,376.98 | $639.29 | $133.28 | | $2,604.41 | $248.15 | $10.13 | ($133.28) | $32.50 | $3,534.48 |
| 00010458071 | 09/15/2023 | $3,833.33 | $765.49 | $163.98 | $54.21 | $2,849.65 | $280.71 | $11.50 | ($163.98) | $32.50 | $3,994.06 |
| 00010288285 | 09/15/2023 | $1,000.00 | $132.00 | $119.69 | | $748.31 | $67.34 | $1.70 | ($119.69) | $32.50 | $981.85 |
| 00010103009 | 09/15/2023 | $8,333.33 | $1,305.04 | $843.13 | $66.26 | $6,118.90 | $572.99 | $25.00 | ($843.13) | $32.50 | $8,120.69 |
| 00010382085 | 09/15/2023 | $3,250.00 | $773.15 | | | $2,476.85 | $248.63 | $8.74 | $0.00 | $32.50 | $3,539.87 |
| 00010327915 | 09/15/2023 | $14,583.33 | $3,888.05 | $497.41 | | $10,197.87 | $204.25 | $43.75 | ($497.41) | $32.50 | $14,366.42 |
| 00010384568 | 09/15/2023 | $5,833.33 | $1,428.46 | $13.59 | | $4,391.28 | $445.22 | $17.50 | ($13.59) | $32.50 | $6,314.96 |
| 00010407816 | 09/15/2023 | $5,000.00 | $1,404.94 | $136.79 | $16.86 | $3,441.41 | $372.04 | $13.25 | ($136.79) | $32.50 | $5,281.00 |
| 00001185053 | 09/15/2023 | $3,870.00 | $824.97 | | | $3,045.03 | $296.05 | $11.61 | $0.00 | $32.50 | $4,210.16 |
| 00010368658 | 09/15/2023 | $29.16 | $2.24 | | $26.92 | $0.00 | $3.76 | $0.09 | $0.00 | $32.50 | $65.51 |
| 00010339625 | 09/15/2023 | $1,400.00 | $139.84 | $525.89 | $106.76 | $627.51 | $66.87 | $3.37 | ($525.89) | $32.50 | $976.85 |
| 00010102944 | 09/15/2023 | $4,906.67 | $1,021.06 | $119.69 | | $3,765.92 | $366.22 | $22.47 | ($119.69) | $32.50 | $5,208.17 |
| 00010196684 | 09/15/2023 | $6,118.33 | $1,492.15 | $149.05 | $135.28 | $4,341.85 | $456.65 | $10.40 | ($149.05) | $32.50 | $6,468.83 |
| 00010162190 | 09/15/2023 | $1,000.00 | $91.27 | | | $908.73 | $76.50 | $4.58 | $0.00 | $32.50 | $1,113.58 |
| 00010039086 | 09/15/2023 | $4,443.33 | $1,228.20 | | | $3,215.13 | $339.92 | $7.69 | $0.00 | $32.50 | $4,823.44 |
| 00010103010 | 09/15/2023 | $4,370.00 | $973.22 | | | $3,396.78 | $334.30 | $13.11 | $0.00 | $32.50 | $4,749.91 |
| 00010319481 | 09/15/2023 | $1,000.00 | $90.10 | $146.87 | $32.59 | $730.44 | $69.10 | $3.29 | ($146.87) | $32.50 | $958.02 |
| 00010288362 | 09/15/2023 | $1,000.00 | $75.93 | $7.41 | | $916.66 | $75.93 | $4.46 | ($7.41) | $32.50 | $1,105.48 |
| 00010339747 | 09/15/2023 | $99.47 | $7.61 | | $91.86 | $0.00 | $10.75 | $0.19 | $0.00 | $32.50 | $142.91 |
| 00010104974 | 09/15/2023 | $8,333.33 | $1,957.14 | $843.13 | | $5,533.06 | $572.99 | $25.00 | ($843.13) | $32.50 | $8,120.69 |
| 00010287418 | 09/15/2023 | $5,000.00 | $796.64 | $147.75 | | $4,055.61 | $371.20 | $15.00 | ($147.75) | $32.50 | $5,270.95 |
| 00010358824 | 09/15/2023 | $4,583.33 | $640.45 | $525.89 | $137.14 | $3,279.85 | $310.39 | $13.75 | ($525.89) | $32.50 | $4,414.08 |
| 00010168067 | 09/15/2023 | $5,000.00 | $372.01 | $137.11 | $20.02 | $4,470.86 | $372.01 | $15.00 | ($137.11) | $32.50 | $5,282.40 |
| 00010271852 | 09/15/2023 | $4,166.67 | $678.12 | | | $3,488.55 | $318.74 | $12.50 | $0.00 | $32.50 | $4,530.41 |
| 00010168039 | 09/15/2023 | $3,541.67 | $679.84 | $161.18 | $2.66 | $2,697.99 | $258.61 | $10.63 | ($161.18) | $32.50 | $3,882.23 |
| 00010368105 | 09/15/2023 | $1,400.00 | $287.19 | | | $1,112.81 | $107.10 | $2.69 | $0.00 | $32.50 | $1,542.29 |
| 00010434370 | 09/15/2023 | $1,000.00 | $76.50 | | | $923.50 | $89.00 | $4.72 | $0.00 | $32.50 | $1,126.22 |
| 00010284378 | 09/15/2023 | $4,191.05 | $873.39 | $149.05 | $53.31 | $3,115.30 | $309.21 | $13.28 | ($149.05) | $32.50 | $4,396.99 |
| 00010103014 | 09/15/2023 | $5,000.00 | $1,125.24 | $138.27 | | $3,736.49 | $371.92 | $15.00 | ($138.27) | $32.50 | $5,281.15 |
| 00010290631 | 09/10/2023 | $931.65 | $106.74 | | | $824.91 | $71.28 | $2.79 | $0.00 | $32.50 | $1,038.22 |
| 00010102964 | 09/15/2023 | $5,416.67 | $695.90 | $163.98 | | $4,556.79 | $401.84 | $16.25 | ($163.98) | $32.50 | $5,703.28 |
| 00010284680 | 09/15/2023 | $9,126.25 | $2,233.35 | $138.16 | | $6,754.74 | $687.58 | $27.38 | ($138.16) | $32.50 | $9,735.55 |
| 00010102991 | 09/15/2023 | $9,166.67 | $2,268.74 | $754.51 | | $6,143.42 | $643.52 | $27.50 | ($754.51) | $32.50 | $9,115.68 |
| 00010185728 | 09/15/2023 | $8.12 | $3.12 | | $5.00 | $0.00 | $0.82 | $0.03 | $0.00 | $32.50 | $41.47 |
| 00010103016 | 09/15/2023 | $2,526.82 | $294.54 | $123.76 | $18.05 | $2,090.47 | $183.84 | $7.58 | ($123.76) | $32.50 | $2,626.98 |
| 00010282419 | 09/15/2023 | $2,500.00 | $307.32 | | $19.99 | $2,172.69 | $191.25 | $10.25 | $0.00 | $32.50 | $2,734.00 |
| 00010324623 | 09/15/2023 | $16.24 | $1.24 | | $15.00 | $0.00 | $1.78 | $0.07 | $0.00 | $32.50 | $50.59 |
| 00010102942 | 09/15/2023 | $23,450.00 | $8,569.47 | $138.16 | | $14,742.37 | $1,783.37 | $70.35 | ($138.16) | $32.50 | $25,198.06 |
| 00010303767 | 09/15/2023 | $4,583.33 | $1,257.80 | | | $3,325.53 | $350.63 | $13.89 | $0.00 | $32.50 | $4,980.35 |
| **TriNet - W2** | | **$273,464.18** | **$62,180.99** | **$8,871.82** | **$1,011.00** | **$201,400.37** | **$19,546.62** | **$804.71** | **($8,723.40)** | **$2,278.73** | **$287,370.84** |

Company Name : MV Realty PBC, LLC
**09/15/23 Payroll - TriNet W2**
Run Date : 09/24/2023 03:23:07 PM

| Employee ID | Pay End Date | Gross Wages - Totals | Taxes - EE - Totals | Deductions - EE - Totals | Health Benefits - EE - Totals | Net Pay | Taxes - ER - Totals | Workers Comp Fee - Totals | Returned Deductions - Totals | Fees - Totals | Total Client Charges |

Payroll Register Excel with Employer Charges
Company Name : MV Realty PBC, LLC
**09/15/23 Payroll - ADP 1099**

| | Pay End Date | TOTAL EARNINGS | Salary | Commission |
|---|---|---|---|---|
| SA13800 | 09/15/2023 | $ 4,333.33 | $ 4,333.33 | $ - |
| EB10509 | 09/15/2023 | $ 916.66 | $ 916.66 | $ - |
| DB18551 | 09/15/2023 | $ 1,400.00 | $ 1,400.00 | $ - |
| GC00016 | 09/15/2023 | $ 12,740.00 | $ - | $ 12,740.00 |
| TC02783 | 09/15/2023 | $ 2,500.00 | $ 2,500.00 | $ - |
| JD17595 | 09/15/2023 | $ 1,400.00 | $ 1,400.00 | $ - |
| MG17595 | 09/15/2023 | $ 3,125.00 | $ 3,125.00 | $ - |
| FG03616 | 09/15/2023 | $ 1,350.00 | $ 1,350.00 | $ - |
| EH00228 | 09/15/2023 | $ 500.00 | $ 500.00 | $ - |
| LG00120 | 09/15/2023 | $ 1,400.00 | $ 1,400.00 | $ - |
| DC16131 | 09/15/2023 | $ 3,116.50 | $ - | $ 3,116.50 |
| WK00934 | 09/15/2023 | $ 1,400.00 | $ 1,400.00 | $ - |
| AL00934 | 09/15/2023 | $ 3,136.50 | $ 1,250.00 | $ 1,886.50 |
| RM08326 | 09/15/2023 | $ 20,300.00 | $ - | $ 20,300.00 |
| SM04148 | 09/15/2023 | $ 7,943.37 | $ 1,458.33 | $ 6,485.04 |
| CM09705 | 09/15/2023 | $ 1,133.16 | $ - | $ 1,133.16 |
| SR02025 | 09/15/2023 | $ 1,450.00 | $ 1,450.00 | $ - |
| JR12475 | 09/15/2023 | $ 6,550.00 | $ - | $ 6,550.00 |
| RG03716 | 09/15/2023 | $ 695.45 | $ - | $ 695.45 |
| MS04039 | 09/15/2023 | $ 2,105.00 | $ 1,400.00 | $ 705.00 |
| RW00301 | 09/15/2023 | $ 750.00 | $ 750.00 | $ - |
| CH05522 | 09/15/2023 | $ 800.00 | $ 800.00 | |
| **ADP - 1099** | | $ **79,044.97** | $ 25,433.32 | $ 53,611.65 |

| **TriNet - W2 total** | **287,370.84** |
|---|---|

| **TOTAL FUNDED, 09/15/23** | **366,415.805** |
|---|---|