**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 23-17590-EPK |
| MV REALTY PBC, LLC *et al.,* | CHAPTER 11 |
| Debtors. | (Jointly Administered) |

**DEBTORS' *EMERGENCY* MOTION FOR ORDER APPROVING**
**FORM OF NOTICE OF COMMENCEMENT AND PROOF OF CLAIM**

> **The Debtors respectfully request that an *emergency* hearing be conducted by the Court. The Debtors wish to provide creditors with notice of the commencement of these Chapter 11 cases and the bar dates for filing proofs of claim.**

Each of the Debtors,[1] by and through their proposed undersigned counsel, and pursuant to the provisions of 11 U.S.C. §§ 105(a) and 502(c), file this *Emergency Motion For Order Approving Form of Notice of Commencement and Proof of Claim* (the "Motion"), and in support thereof, state as follows:

---

[1] The last four digits of the Debtors' federal tax identification numbers are: *MV Realty, PBC LLC (6755), MV Realty Holdings, LLC (3483), MV Receivables II, LLC (9368), MV Receivables III, LLC (6793), MV Realty PBC, LLC (Pennsylvania) (7301), MV Realty of South Carolina, LLC (7322), MV Realty of North Carolina, LLC (3258), MV of Massachusetts, LLC (0864), MV Realty of Illinois, LLC (8814), MV Realty of Arizona, LLC (2725), MV Realty of Connecticut, LLC (8646), MV Realty PBC, LLC (Georgia) (6796), MV Realty of New Jersey, LLC (5008), MV Realty of Washington, LLC (7621), MV Realty of Maryland, LLC (9945), MV Realty of Virginia, LLC (2129), MV Realty of Tennessee, LLC (7701), MV Realty of Wisconsin, LLC (2683), MV Realty of Nevada, LLC (0799), MV Realty of Oregon, LLC (3046), MV Realty of Utah, LLC (4543), MV Realty of Minnesota, LLC (1678), MV Realty of Indiana, LLC (3566), MV Realty of Missouri, LLC (6503), MV Homes of New York, LLC (2727), MV Realty of Idaho, LLC (8185), MV Realty of Alabama, LLC (6462), MV Realty of Colorado, LLC (1176), MV Realty of Oklahoma, LLC (8174), MV Realty of Louisiana, LLC (3120), MV Realty of Kansas, LLC (2304), MV Realty of Kentucky, LLC (2302), MV Realty of California (7499), MV Realty of Texas, LLC (7182), MV Realty of Michigan, LLC (5280,) and MV Realty of Ohio, LLC (0728).*

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (M).

2.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 502(c), as well as Rules 2002(a)(7), 3003(c)(3), 3018(a), 6003, and 9006(c)(1) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## BACKGROUND

### A.      Filing

3.      On September 22, 2023, the Debtors each filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. The Debtors are in possession of their assets and operating their businesses as debtors-in-possession pursuant to the authority of 11 U.S.C. §§ 1107 and 1108.

### B.      Organizational Structure

4.      Debtor, MV Realty Holdings, LLC ("Holdings") is a Florida limited liability company and the sole owner of Debtor, MV Realty PBC, LLC a Florida limited liability company ("PBC"), and MV Brokerage, LLC ("Brokerage").

5.      PBC is the sole owner of the following debtors: (a) MV Realty Receivables II, a Florida limited liability company ("Receivables II"); (b) MV Realty Receivables III, a Florida limited liability company ("Receivables III"); (c) MV Realty of California, a California corporation ("California"); and (d) thirty-one (31) additional debtor subsidiaries (collectively, with California, the "MV Realty Subs"), each of which is a limited liability company organized under the laws of the states of Pennsylvania, South Carolina, North Carolina, Massachusetts,

Illinois, Arizona, Connecticut, Georgia, New Jersey, Washington, Maryland, Virginia, Tennessee, Wisconsin, Nevada, Oregon, Utah, Minnesota, Indiana, Missouri, New York, Idaho, Alabama, Colorado, Oklahoma, Louisiana, Kansas, Michigan, Kentucky, Texas and Ohio. Each of the MV Realty Subs is incorporated or organized under the laws of the respective states as follows: "*MV Realty of [state], LLC*" (with the exception of New York ("MV Homes of New York, LLC") and Massachusetts, ("MV of Massachusetts, LLC")).

6.      Brokerage is the sole owner of the following (collectively, the "<u>MV Brokerage Subs</u>"): (a) thirty-three (33) separate subsidiaries, each of which is a limited liability company organized under the laws of the states of Florida, Pennsylvania, South Carolina, North Carolina, Massachusetts, Illinois, Arizona, Connecticut, Georgia, New Jersey, Washington, Maryland, Virginia, Tennessee, Wisconsin, Nevada, Oregon, Utah, Minnesota, Indiana, Missouri, New York, Idaho, Alabama, Colorado, Oklahoma, Louisiana, Kansas, Michigan, Kentucky, Texas and Ohio; and (b) one subsidiary incorporated under the laws of the state of California. For the most part, the MV Brokerage Subs each operate as "*MV Brokerage of [state], LLC*."

<u>C</u>.      ***Business Operations***

7.      PBC is the servicing entity, which operates primarily from premises located at 815 Broken Sound Parkway, Boca Raton, Florida 33487. Currently, PBC has 79 full-time employees, and also uses the services of 156 independent contractors, who receive 1099s.

8.      PBC was founded in 2014 and initially operated as a traditional real estate brokerage firm. In October 2018, PBC began focusing its efforts on developing and marketing a unique product to residential homeowners.

9.      In or around October 2018, PBC implemented the "Homeowner Benefit Program" (the "<u>HBP</u>"). As part of the HBC, the MV Realty Subs enter "Homeowner Benefit Agreements"

(the "HBA") with residential homeowners. The HBA is not a listing agreement, but is a forward listing contract pursuant to which the MV Realty Subs pay an upfront cash payment to homeowners in exchange for the exclusive right to list a homeowner's home if and when the homeowner decides to sell their home. The term of the HBA is forty (40) years subject to certain early termination events.

10.     In accordance with an HBA, a selling homeowner lists their home with the applicable MV Realty Sub, which then lists and sells the home for a standard commission, including any participating broker commission. In the event the home does not sell within six (6) months, the homeowner may terminate the HBA at no cost and without penalty. The HBA is not a listing agreement.

11.     In the event a homeowner breaches the HBA, which results in an early termination of the HBA, the MV Realty Subs are typically entitled to a termination fee equal to three percent (3%) of the greater of (a) the fair market value of the home at the time the HBA is executed, and (b) the fair market value at the time of breach or early termination.

12.     Additionally, the MV Realty Subs reserves the right to record a memorandum ("Memorandum"), or other similar notice, of the HBA in the public records in the county in which the real estate is located. Although the HBAs are governed by the laws of the state in which the HBA is entered, the terms of the HBAs and Memoranda are substantively consistent from state to state.

13.     At the present time, the MV Realty Subs are parties to approximately 34,000 HBAs.  The HBAs may be considered executory contracts.

**_D_.**      **_Financing – Goodwood I_**

14.      On or about February 11, 2020, MV Receivables I, LLC ("Receivables I"), a wholly owned subsidiary of PBC, entered into a credit agreement (the "Goodwood I Credit Agreement") with Goodwood Fund, as the initial lender ("Goodwood Fund" and, together with other lenders under the Goodwood I Credit Agreement, the "Goodwood I Lenders"), and Goodwood Inc., as agent ("Goodwood Inc."). The parties also executed, among other documents, a Security Agreement (the "Goodwood I Security Agreement" and, collectively with the Goodwood I Credit Agreement and other related documents, the "Goodwood I Loan Documents").

15.      PBC and Receivables I also entered a Purchase and Contribution Agreement (the "Purchase Agreement") pursuant to which Receivables I agreed to purchase HBAs acquired with amounts advanced under the terms of the Goodwood I Credit Agreement. The advance rate is typically sixty percent (60%) of discounted eligible receivables. The amount of $10,000,000.00 has been advanced under the Goodwood I Credit Agreement.

16.      Under the Goodwood I Security Agreement, Receivables I granted a security interest in and to its assets, including, without limitation, certain HBAs, accounts, receivables, and general intangibles, in favor of Goodwood Inc., as agent for the Goodwood I Lenders. PBC signed a limited guarantee of amounts owed by Receivables I under the Goodwood I Credit Agreement.

**_E_.**      **_Financing – Monroe Capital_**

17.      On or about July 28, 2021, Receivables II entered into a $40,000,000.00 senior secured delayed draw credit facility (the "Monroe Credit Facility") with Monroe Capital Management Advisors, LLC, as administrative and collateral agent ("Monroe Capital"), and the

lenders under the Monroe Credit Facility (collectively, the "Monroe Lenders"). Receivables II and Monroe Capital executed, among other documents, a Credit Agreement (the "Monroe Credit Agreement"), Security Agreement (the "Monroe Security Agreement", and Pledge Agreement (the "Monroe Pledge Agreement" and, collectively with Monroe Credit Agreement, the Monroe Security Agreement, and related other agreements, the "Monroe Loan Documents").

18.    The Monroe Lenders have advanced the amount of $40,000,000.00 to Receivables II under the Monroe Credit Facility, the proceeds of which were to be used to acquire eligible receivables in accordance with the Monroe Credit Agreement and to fund operations and other related expenses.

19.    Under the Monroe Credit Facility, PBC, certain of the MV Realty Subs (New Jersey, Connecticut, Illinois, Massachusetts, North Carolina, South Carolina, and Georgia) (collectively, and excluding PBC, the "Initial MV Realty Guarantors") initially guaranteed the obligations of Receivables II. The Monroe Credit Facility was later guaranteed by subsequent MV Realty Subs, who organized and became parties to the Monroe Credit Facility and Monroe Loan Documents as the operation expanded.

20.    In accordance with the Monroe Pledge Agreement, (a) Holdings pledged its equity interest in in PBC, and (b) PBC pledged its membership interests in the MV Realty Subs, in favor of Monroe Capital, as collateral agent. All membership interests are uncertificated.

21.    In accordance with the Monroe Security Agreement, Receivables II, PBC, and the Initial MV Realty Guarantors, as well as any other MV Realty Subs who later joined the Monroe Credit Facility and Monroe Loan Documents, granted Monroe Capital a security interest in their assets, including, without limitation, accounts, documents, general intangibles, investment property, receivables, and receivables relating to the HBAs.

22.     Generally speaking, (a) the MV Realty Subs would entered into HBAs with homeowners, thus giving the MV Realty Subs the exclusive right to list homes in the event a homeowner ever decide to sell their home, (b) the receivables under the HBAs were to be sold or otherwise assigned to MV Receivables II, and (c) Monroe Capital then advanced at a rate of forty-five percent (45%) of the net present value of eligible receivables under the HBAs.

### F.     _Consent and Confirmation Agreement_

23.     In or about July 2021, Monroe, Goodwood Inc., PBC and Receivables I entered into the Acknowledgement and Confirmation Agreement (the "Confirmation Agreement"), which was, essentially, an inter-creditor agreement, pursuant to which Monroe and Goodwood Inc. acknowledged and consented to the other's respective rights under the Monroe Capital Loan Documents and the Goodwood I Loan Documents, respectively.

### G.     _Financing - Goodwood II_

24.     On November 4, 2022, MV Receivables III, LLC ("Receivables III"), Goodwood MV Realty LP, as the initial lender ("Goodwood MV" and, together with any other related lenders, the "Goodwood II Lenders"), and Goodwood, Inc. ("Goodwood Inc."), as agent, entered into a Credit Agreement (the "Goodwood II Credit Agreement"). The parties also executed, among other documents, a Security Agreement (the "Goodwood II Security Agreement" and, collectively with the Goodwood II Credit Agreement and other related documents, the "Goodwood II Loan Documents").

25.     In accordance with the Goodwood II Credit Agreement, Receivables IIII agreed to purchase HBAs acquired with amounts advanced under the terms of the Goodwood II Credit Agreement. The advance rate was approximately sixty percent (60%) of the net present value of eligible receivables under the HBAs. The amount of $4,500,000.00 has been advanced.

26.    Under the Goodwood II Security Agreement, Receivables III granted Goodwood Inc. a security interest in and to its assets, including, without limitation, the HBAs, accounts, receivables, and general intangibles.  MV Brokerage signed a limited guarantee of amounts owed by Receivables III under the Goodwood II Credit Agreement.

**_H._**    **_Other Financing_**

27**.**    In February 2023, Holdings executed senior notes with eight (8) shareholders of Holdings, who advanced a total of $12,968,000.00 (collectively, the "Shareholder Notes"). There is approximately $14,103,144.11 outstanding, including accrued interest, under the Shareholder Notes. The proceeds borrowed were used to fund operations.

28.    Additionally, in 2021 and 2022, Holdings executed two (2) rounds of convertible notes, one of which has since converted. The later round, which was in the total amount of $6,070,000.00, has not been converted.

**_I._**    **_Assets and Secured Obligations_**

29.    Monroe is currently owed approximately $40,000,000.00, while the Goodwood I Lenders and Goodwood II Lenders are owed approximately $7,408,275.82 and $4,460,000.00, respectively. As of September 5, 2023, the net present value of the collateral securing the foregoing obligations is (a) $89,315,255.01 (Monroe), (b) $12,656,966.30 (Goodwood I), and (c) $6,106,069.54 (Goodwood II). Holdings has additional HBAs with an aggregate net present value of approximately $12,861,536.97. Accordingly, the total net present value of HBAs exceeds $120,000,000.00.

## EVENTS LEADING TO BANKRUPTCY

30.    Since November 29, 2022, the states of Florida, Pennsylvania, Massachusetts, Ohio, North Carolina, New Jersey, and Indiana commenced actions against certain of the MV

Realty Subs (collectively, the "State Actions"). PBC is a named defendant in the State Actions commenced by the states of Florida, Pennsylvania, New Jersey, North Carolina, Massachusetts, and Indiana. Other individual officers and licensed real estate brokers working in connection with the HBAs are named in nearly all State Actions. The allegations asserted in the State Actions range from telemarketing violations to unfair or deceptive trade practices.

31.     It is alleged in the State Actions that the filing of the memorandum, which provides constructive notice to the public of the existence of the HBA and its terms, unfairly or deceptively interferes with the homeowner's ability to sell the home.

32.     The Debtors contend that the memorandum, which is separately signed by each homeowner under the HBA, is neither deceptive nor unfair. Rather, the memorandum is filed in accordance with the applicable law of each state and serves the purpose intended by the applicable law of each state by providing public notice of the HBA.

33.     Moreover, in several instances, it is alleged in the State Actions that the Debtors made improper telephone solicitations to prospective customers without their consent.  To date, however, the Debtors have not had any meaningful opportunity to present in court the vast number of lawfully obtained consents from prospective homeowners authorizing these very solicitations.

34.     It has also been alleged in many of the State Actions that the Debtors' sales and marketing practices "prey" upon customers who are elderly or of diminished financial means. However, the Debtors strenuously disagree with such allegations as being unsupported by fact. The facts are that (a) the typical homeowner in an HBA owns a home with an average value exceeding $300,000, and (b) the average age of homeowners under HBAs is 55 years old (and 72% of homeowners are under age 65).  By comparison, the American Housing Survey 2021,

based on US Census Bureau data, indicates that only 67.3% of homeowners in the country are under the age of 65. Thus, the homeowners under the HBAs are proportionally younger than a typical cross-section of homeowners overall in the United States.

35.     It is alleged or implied in the State Actions that a very significant portion of the Debtors' customers are aggrieved and have complained to state consumer protection authorities. However, this allegation is inaccurate and unsupported by the facts. For example, in North Carolina, over the 16-month period prior to the commencement of the State Action, the state consumer protection authorities made the Debtors aware of only twelve (12) consumer complaints (out of a total of 2,100 HBAs in North Carolina) regarding allegedly deceptive conduct by the Debtors.  These complaints came mostly from customers who alleged deception or unfairness by the Debtors only after the homeowner had breached the HBA. In contrast, the Debtors, in a mere 45-day period, following the commencement of the State Action in North Carolina, obtained at least 250 sworn statements from North Carolina homeowners attesting that they understood the key terms and elements of the HBA.

36.     It is also well worth noting that the Debtors previously engaged national and well-recognized local law firms prior to implementing the HBP in each state, who advised as to compliance with state and other applicable laws with respect to the sales and marketing of the HBP and HBAs, as well as with respect to the terms and conditions of the HBAs and related agreements.

37.     Accordingly, the defendants vigorously oppose the State Actions and contend that the HBAs comply with all applicable laws.

38.    Finally, there are other actions that have been commenced by real estate regulatory commissions that include both the MV Brokerage Subs and the individual licensed real estate agents and brokers in connection with their work on the HBAs.

39.    In defending against the State Actions and other regulatory matters, the Debtors have spent and incurred millions of dollars in legal fees, and the Debtors' personnel have devoted substantial time in assisting defense counsel.

40.    The Debtors commenced these Chapter 11 proceedings to protect and maximize the value of their assets and for the purpose of implementing one or more strategies aimed at alleviating or otherwise minimizing the financial strain of the State Actions. The Debtors also intend to protect the assets from any adverse creditor action, and otherwise preserving estate assets for the benefit of all creditors.

## RELIEF REQUESTED

41.    The Debtors respectfully request that the Court approve the notice of commencement of these Chapter 11 cases ("Notice of Commencement"), which includes the bar dates for filing proofs of claim in these Chapter 11 cases ("Bar Dates"), the proposed form of which is attached hereto as Exhibit "A." Additionally, the Debtors request that the Court also approve proof of claim form (the "Proof of Claim Form"), the proposed form of which is attached hereto as Exhibit "B."

42.    The Debtors have more than 100 creditors, who hold potential Claims, and certain of the Debtors are parties to approximately 34,000 HBAs (collectively, the "HBA Parties").

### A.    Notice of Commencement of Case and Bar Dates

43.    The Debtors seek to ensure that all interested parties receive sufficient Notice of Commencement, including the applicable Bar Dates for filing proofs of claim.

44.     By this Motion, the Debtors proposed to provide actual written of Notice of the Commencement and the Bar Dates to all known persons and entities holding Claims, as defined in section 101(5) of the Bankruptcy Code, for whom the Debtors have an actual deliverable address. The Debtors also intend to provide the Notice of Commencement and the Bar Dates to the HBA Parties.

45.     By separate application, the Debtors shall seek authority to retain Epiq Corporate Restructuring ("Epiq") as claims and notice agent in these Chapter 11 cases ("Claims and Notice Agent"). Once approved, Epiq shall serve the Notice of Commencement and Bar Dates.

46.     There may be a brief lag between Epiq's retention and the mailing of the Notice of Commencement and Bar Dates and, therefore, the Debtors respectfully request that the Bar Dates be established in a manner to account for any such brief delay, so as to ensure proper notice is provided in accordance with Bankruptcy Rules 2002(a). The Debtors will coordinate the dates with the Office of the United States Trustee and the Clerk of the Court.

47.     The proposed Notice of Commencement and Bar Dates will: (a) advise any potential holder of Claims and other parties in interest with notice of commencement of these Chapter 11 cases; (b) advise potential creditors of the need to file a proof of claim under Bankruptcy Rules 3002(a) and 3003(c)(2); (c) alert potential creditors of the consequences of failing to timely file a proof of claim as set forth in Bankruptcy Rule 3003(c)(2); (d) specify the form to be used in filing a proof  of claim; (e) set forth the Bar Dates; (f) provide the addresses for filing a proof of claim, including electronically; and (g) provide that separate proofs of claim must be filed for claims alleged against different Debtors.

**B.**     ***Proof of Claim Form***

48.     The proposed Proof of Claim Form is attached hereto as <u>Exhibit</u> "<u>B</u>."

49.     The Debtors propose that the Bar Dates shall apply to all Persons or Entities, as such terms are defined in sections 101(41) and 101(15) of the Bankruptcy Code, holding a Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors (regardless of whether such Claim is secured, priority, or unsecured) that arose prior to September 22, 2023, including, but not limited to, the following: (a) any Person or Entity whose Claim is listed on any of the Debtors' schedules as "disputed," "contingent," or "unliquidated," and that wishes to assert a Claim against the Debtors that may otherwise entitle such Person or Entity to vote on any plan of reorganization or participate in any distribution under such plan; (b) any Person or Entity who believes that its Claim is improperly classified in any of the Debtors' schedules or is listed in an incorrect amount and that wishes to assert its Claim in a classification or amount other than as set forth in any of the Debtors' schedules; and (c) any Person or Entity whose Claim is not listed in the applicable Debtors' schedules.

50.     The Debtors request that they retain, and do not waive, the right to: (a) dispute, contest, setoff, recoup, object to, and assert any defenses, counterclaims, or subordination against, any filed Claim or any Claim listed or reflected in the Debtors' schedules as to nature, amount, liability, classification, or otherwise; or (b) subsequently designate any Claim as disputed, contingent, or unliquidated.

51.     The Debtors further request that pursuant to Bankruptcy Rule 3003(c)(2), any Person or Entity that is required to file a proof of Claim, but fails to do so in a timely manner, shall be forever barred, estopped, and enjoined from: (a) asserting any Claim against the Debtors that (i) is in an amount in excess of the amount, if any, set forth in any of the Debtors' schedules,

or (ii) is of a different nature or in a different classification; and (b) voting upon, or receiving distributions under, any plan in these Chapter 11 cases in respect of such Claim.

52.     In providing notice of the Bar Dates, the Debtors will provide to holders of Claims the Proof of Claim Form subject, however, to the approval of the Court. The Debtors propose that, in order for any Proof of Claim Form to be timely and properly filed, a signed original of the Proof of Claim Form, together with accompanying documentation, must be sent so as to be received by the Claims and Noticing Agent, as the address indicated on the Proof of Claim Form, unless the Proofs of Claim may be filed electronically on any case portal established by the Claims and Notice Agent, on or before the applicable Bar Dates.

53.     In the event any creditor wishes to receive an acknowledgement of receipt of the Proof of Claim Form, the claimant must provide an additional copy of the Proof of Claim Form together with a self-addressed, postage pre-paid envelope, unless the Proof of Claim is filed electronically.

54.     The Debtors also propose that all Persons or Entities asserting Claims against one or more of the Debtors be required to submit a separate Proof of Claim Form for each Debtor against which such Persons or Entities assert a Claim. Such Persons or Entities should also be required to identify on each Proof of Claim Form, the particular Debtor against which the Claim is being asserted.

55.     Finally, the Debtors propose that all Persons and Entities asserting Claims against the Debtors be required to file the Proof of Claim Forms in English and in U.S. dollar denominations. In the event a Person or Entity fails to assert the Proof of Claim Form in U.S. dollars, then the Debtors propose to convert such Claim from the stated currency to U.S. dollars, as of September 22, 2023, or such other date as the Court may deem more appropriate.

## RESERVATION OF RIGHTS

56.      Nothing contained herein is intended or should be construed as a waiver of any rights, claims, objections, and defenses of the Debtors under applicable bankruptcy and/or non-bankruptcy law, including, without limitation, the rights to object to any Claim, as such term is defined under the Bankruptcy Code, for any reason. Any and all of the Debtors' rights, claims, objections, and defenses, including, without limitation, any rights of setoff, are expressly preserved.

**WHEREFORE,** the Debtors respectfully request that the Court grant this Motion and enter an order (the proposed form of which is attached hereto as Exhibit "C") approving substantially in the proposed forms of Notice of Commencement and Bar Dates, and Proof of Claim Form, copies of which are attached hereto as Exhibit "A" and Exhibit "B", respectively, as well as granting any other and further relief that the Court may deem just and proper.

## CERTIFICATE OF EXIGENT CIRCUMSTANCES

**I HEREBY CERTIFY** that an emergency hearing has been requested, since the relief requested is necessary to afford notice of commencement of these Chapter 11 cases, the bar dates for filing proofs of claim, and the proposed form of proof of claim.

**SEESE, P.A.**
*Proposed* Attorneys for Debtors-in-Possession
101 N.E. 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone No.: (954) 745-5897
mseese@seeselaw.com

By:      ***s/Michael D. Seese***
            Michael D. Seese, Esq.
            Fla. Bar No. 997323

15

# EXHIBIT A

*Proposed Notice of Commencement (and Bar Dates)*

| Information to identify the case: |
| --- |
| |

**Official Form 309F1 (For Corporations or Partnerships)**

# Notice of Chapter 11 Bankruptcy Case

10/20

**For the debtors listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors and debtors, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 11 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at https://pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | |
| --- | --- |
| 1. **Debtors' full names:  See attached** *Schedule 1* **for all Debtors' names.** | |
| 2. **All other names used in the last 8 years: none** | |
| 3. **Addresses:   815 Broken Sound Parkway**<br>  **Suite 140**<br>  **Boca Raton, Florida 33487** | |
| 4. **Debtors' attorney: Michael D. Seese, Esq., Seese, P.A.**<br>  **101 NE 3rd Avenue, Suite 1500, Ft. Lauderdale, FL 33130** | Contact phone  (954) 745-5897 |
| 5. **Bankruptcy clerk's office:**<br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at https://pacer.uscourts.gov. | **Flagler Waterview Building**<br>**1515 North Flagler Drive, Suite 801**<br>**West Palm Beach, FL 33401** | Hours open 8:30 - 4:00 p.m.<br><br>Contact phone: (561) 514-4100 |
| 6. **Meeting of creditors**<br>The debtors' representative must attend the meeting to be questioned under oath.<br>Creditors may attend, but are not required to do so. | _____ at _____<br>Date            Time<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location: **MEETING WILL BE HELD BY TELEPHONE**<br><br>**Trustee: Office of the US Trustee**<br>**Call in number:_____**<br>**Participant code:_____** |

For more information, see page 2 ▶

Debtor    **See attached** *Schedule 1*                                                        Case number  **See attached** *Schedule 1*

| | | |
|---|---|---|
| **7. Proof of claim deadline** | **Deadline for filing proofs of claim:**<br>(except governmental units) | **Filing Deadline: _____** |
| | **Deadline for governmental units to file a proof of claim:** | **Filing Deadline: _____** |

**7. Proof of claim deadline**

*When filing  proofs of claims*:

If by Hand Delivery or Overnight Mail:

**MV Realty PBC, LLC et al.,**
**Claims Processing Center**
**c/o Epiq Corporate Restructuring, LLC**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

Proofs of claims may also be filed
**electronically** *via* the case website:

**https://dm.epiq11.com/MVRealty**

**Deadline for filing proofs of claim:**
(except governmental units)

**Filing Deadline: _____**

**Deadline for governmental units to file a proof of claim:**

**Filing Deadline: _____**

A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office, on the case website at https:// [TBD], or by calling the toll-free information line at [TBD].

Your claim will be allowed in the amount scheduled unless:
- your claim is designated as *disputed*, *contingent*, or *unliquidated*;
- you file a proof of claim in a different amount; or
- you receive another notice.

If your claim is not scheduled or if your claim is designated as *disputed*, *contingent*, or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled.

You may review the schedules at the bankruptcy clerk's office or online at https://pacer.uscourts.gov.

Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial.

---

**8. Exception to discharge deadline**
The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline.

If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below.

**Deadline for filing the complaint:**                    _____

---

**9. Creditors with a foreign address**

If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case.

---

**10. Filing a Chapter 11 bankruptcy case**

Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate its business.

---

**11. Discharge of debts**

Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline.

**EXHIBIT B**

*Proposed Proof of Claim Form*

**PROOF OF CLAIM**

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

Indicate the Debtor against which you assert a claim by checking the appropriate box below. If you assert a claim against more than one Debtor, you must file a separate claim against each applicable Debtor.

(Check *only* one Debtor per Proof of claim from):

| *Name of Debtor and Case Number* | *Name of Debtor and Case Number* | *Name of Debtor and Case Number* |
|---|---|---|
| ☐ MV Realty, PBC LLC (Florida) Case No. 23-17590 | ☐ MV Realty of Maryland, LLC Case No. 23-17602 | ☐ MV Realty of Kansas, LLC Case No. 23-17614 |
| ☐ MV Realty Holdings, LLC Case No. 23-15791 | ☐ MV Realty of New Jersey, LLC Case No. 23-17603 | ☐ MV Realty of Kentucky, LLC Case No. 23-17615 |
| ☐ MV Receivables II, LLC Case No. 23-17592 | ☐ MV Realty of Nevada, LLC Case No. 23-17604 | ☐ MV Realty of Louisiana, LLC Case No. 23-17616 |
| ☐ MV Receivables III, LLC Case No. 23-17593 | ☐ MV Realty of Ohio, LLC Case No. 23-17605 | ☐ MV Realty of Michigan, LLC Case No. 23-17617 |
| ☐ MV Realty PBC, LLC (Georgia) Case No. 23-17594 | ☐ MV Realty of Virginia, LLC Case No. 23-17606 | ☐ MV Realty of Minnesota, LLC Case No. 23-17618 |
| ☐ MV Realty of North Carolina, LLC Case No. 23-17595 | ☐ MV Realty of Washington, LLC Case No. 23-17607 | ☐ MV Realty of Missouri, LLC Case No. 23-17619 |
| ☐ MV Realty PBC, LLC (Penn.) Case No. 23-17596 | ☐ MV Realty of Illinois, LLC Case No. 23-17608 | ☐ MV Homes of New York, LLC Case No. 23-17620 |
| ☐ MV Realty of Arizona, LLC Case No. 23-17597 | ☐ MV of Massachusetts, LLC Case No. 23-17609 | ☐ MV Realty of Oklahoma, LLC, Case No. 23-17621 |
| ☐ MV Realty of California, a corp. Case No. 23-17598 | ☐ MV Realty of Alabama, LLC Case No. 23-17610 | ☐ MV Realty of Oregon, LLC Case No. 23-17622 |
| ☐ MV Realty of Texas, LLC Case No. 23-17599 | ☐ MV Realty of Connecticut, LLC Case No. 23-17611 | ☐ MV Realty of Tennessee, LLC Case No. 23-17623 |
| ☐ MV Realty of South Carolina, LLC Case No. 23-17600 | ☐ MV Realty of Idaho, LLC Case No. 23-17612 | ☐ MV Realty of Utah, LLC Case No. 23-17624 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**NOTE:**

Mail Claim Form to:
**If by First Class Mail**:  MV Realty PBC, LLC, et al., Claims Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O Box 4420, Beaverton, OR 97076-4420.

**If by Hand Delivery or Overnight Mail:** MV Realty PBC, LLC, et al., Claims Processing Center, c/o Epiq Coporate Restructuring, LLC, 10300 SW Allen Blvd., Beaverton, OR 97005.

You may also file your Claim Form *electronically* via the following case website: **https://dm.epiq11.com/MVRealty**

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor

2. **Has this claim been acquired from someone else?**

   ☐ No
   ☐ Yes.  From whom?

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   **Where should notices to the creditor be sent?**

   Name

   Number        Street

   City                    State            ZIP Code

   Contact phone

   Contact email

   **Where should payments to the creditor be sent?** (if different)

   Name

   Number        Street

   City                    State            ZIP Code

   Contact phone

   Contact email

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):

   __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

   ☐ No
   ☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____
                                                                              MM  / DD  / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☐ No
   ☐ Yes.  Who made the earlier filing?

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____. Does this amount include interest or other charges?

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☐ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.     $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
                    MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | _____ |
|---|---|
| | First name          Middle name          Last name |
| Title | _____ |
| Company | _____ |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | _____ |
| | Number          Street |
| | _____ |
| | City          State          ZIP Code |
| Contact phone | _____          Email  _____ |

---

**EXHIBIT C**

*Proposed Order*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 23-17590-EPK |
| MV REALTY PBC, LLC *et al.,* | CHAPTER 11 |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING**
**DEBTORS' *EMERGENCY* MOTION FOR ORDER APPROVING**
**FORM OF NOTICE OF COMMENCEMENT AND PROOF OF CLAIM**

**THIS CAUSE** came before the Court on _____ upon the scheduled

emergency hearing (the "Hearing") on the *Debtors' Emergency Motion for Order Approving*

*Form of Notice of Commencement and Proof of Claim* (the "Motion")[1] [ECF No. _____], and the

Court, having reviewed the file, having heard the presentation of counsel, having determined that

---

[1] Unless defined in this Order, defined terms shall have the meanings ascribed to such terms in the Motion.

good and sufficient cause exist in support of granting relief on an emergency basis, and the Court being otherwise fully advised in the premises, it is

**ORDERED** as follows:

1.      The Motion is **GRANTED** as provided herein.

2.      The Notice of Commencement and Proof of Claim, the proposed forms of which were attached to the Motion as Exhibits "A" and "B," respectively, are approved.

3.      The Bar Dates set forth in the Proof of Claim apply to all Persons or Entities (each as defined in sections 101(41) and 101(15) of the Bankruptcy Code) holding a Claim (as defined in section 101(15) of the Bankruptcy Code) against the Debtors (whether secured, priority, or unsecured) that arose prior to September 22, 2023, including, but not limited to, the following:

> (a)      Any Person or Entity whose Claim is listed as "disputed," "contingent," or "unliquidated" in any of the Debtors' schedules that desires to assert a Claim against the Debtors that would entitle the claimant to vote on any plan of reorganization or participate in any distribution under such plan;
>
> (b)      Any Person or Entity who believes that its Claim is improperly classified in any of the Debtors' schedules or is listed in an incorrect amount and that desires to assert its Claim in a classification or amount other than as set forth in any of the Debtors' schedules; and
>
> (c)      Any Person or Entity whose Claim is not listed in the applicable Debtors' schedules.

4.      The Debtors each shall retain the right to: (a) dispute, contest, setoff, recoup, object, and assert any defenses, counterclaims, or subordination against, any Claim submitted to the Claims and Noticing Agent or any Claim listed or reflected in the appliable Debtors'

schedules as to nature, amount, liability, classification, or otherwise; or (b) subsequently designate any Claim as disputed, contingent, or unliquidated.

5.      Pursuant to Bankruptcy Rule 3003(c)(2), any Person or Entity that is required to submit a Proof of Claim but fails to do so in a timely manner shall be forever barred, estopped, and enjoined from: (a) asserting any Claim against the Debtors that (i) is in an amount that exceeds the amount, if any, that is forth in the applicable Debtors' schedules, or (ii) is of a different nature or in a different classification; and (iii) voting upon, or receiving any distributions under, any plan or plans in these Chapter 11 cases in respect of such Claim.

6.      In providing notice of the Bar Dates, the Debtors shall provide the Proof of Claim Form, which shall be served by the Debtors' Claims and Notice Agent subject, however, to the Court approving such Claims and Notice Agent's retention on behalf of the Debtors.  For any Proof of Claim to be timely and properly filed, either (a) a signed original of the completed Proof of Claim Form, together with any supporting documentation, must be sent so as to be received by the Claims and Notice Agent, at the address(es) provided in the Proof of Claim Form, on or before the Bar Dates, or (b) a executed Proof of Claim Form, tougher with any supporting documentation, must be uploaded electronically in accordance with the instructions provided on the Proof of Claim Form, on or before the Bar Dates.

7.      All Proof of Claim Forms must be in English and in U.S. dollars. If not denominated in U.S. dollars, the Debtors reserve the right to convert such Claim to U.S. dollars, using the applicable conversion rate as of September 22, 2023, unless another date is approved by the Court.

8.      The Debtors shall mail a copy of the Notice of Commencement (and Bar Dates) and Proof of Claim Form, to the last known address of any such Persons or Entities who may

3

have a Claim, by First Class Mail, no later than ten (10) business days following entry of this Order.

9.      Service of the Notice of Commencement of Case and Proof of Claim Form in accordance with this Order shall be deemed good and sufficient notice of the Bar Dates to known creditors.

10.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

11.     This Order shall be effective immediately notwithstanding any automatic stay in effect with respect to this Order under any applicable provisions of the Bankruptcy Code or Bankruptcy Rules.

###

Submitted by:

Michael D. Seese, Esq.
Seese, P.A.
101 N.E. 3rd Avenue, Suite 1500
Ft. Lauderdale, FL 33301
Telephone No.: (954) 745-5897
mseese@seeselaw.com

Copies to:

Michael D. Seese, Esq., who is directed to serve a copy of this Order upon all non-registered users or registered users who have yet to appear electronically in this case and file a conforming certificate of service.