**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

IN RE:                                          Case No.23-17590-EPK

MV REALTY PBC, LLC,                             Chapter 11

                        Debtor.

_____/

**LAKEVIEW LOAN SERVICING, LLC'S**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(Re: 102 Saint Benets Place, Summerville, South Carolina 29485)**

**COMES NOW**, Lakeview Loan Servicing, LLC ("Movant"), by and through undersigned counsel, files this Motion for Relief from the Automatic Stay or, in the Alternative, for Adequate Protection, and in support states as follows:

## I.    JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. Further, review is appropriate under 11 U.S.C. §§ 105(a), 362 and other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

## II.    STATEMENT OF FACTS

**A.    LOAN HISTORY**

1.      On or about September 17, 2014, Tanisha M Gantt ("Borrower") executed a promissory note in the principal sum of $126,663.00 (the "Note"). The Note reflects it was indorsed in blank. The Note is secured by a recorded Mortgage executed by Debtor (the "Mortgage") on the real property located at 102 Saint Benets Place, Summerville, South Carolina 29485 (the "Property"), which is more fully described in the Mortgage, which is recorded in the Public Records of Dorchester County, South Carolina in Book 9447 at Pages 1-12. Said Mortgage secures a Note in the amount of $126,663.00. True and correct copies of the relevant loan documents are attached as Composite Exhibit "A."

2.      The aforementioned mortgage gives Movant a 1st mortgage position on the property

legally described as:

> ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, SITUATE, LYING AND BEING IN THE TOWN OF SUMMERVILLE, COUNTY OF DORCHESTER, STATE OF SOUTH CAROLINA, AND BEING SHOWN AND DESIGNATED AS LOT 6, BLOCK A, SUMMERVILLE PLACE SUBDIVISION, PHASE 1-A, AS SHOWN ON A PLAT MADE BY TRICO SURVEYING, INC., DATED JANUARY 7, 1988, AND ENTITLED "PLAT SHOWING SUMMERVILLE PLACE SUBDIVISION, PHASE 1-A, A 17.966 AC. TRACT OF LAND, PROPERTY OF THE JOHN CROSLAND COMPANY, LOCATED IN THE TOWN OF SUMMERVILLE, DORCHESTER COUNTY, SOUTH CAROLINA," WHICH SAID PLAT IS RECORDED IN THE REGISTER OF DEEDS OFFICE FOR DORCHESTER COUNTY IN PLAT CABINET F, SLIDE 337. SAID LOT HAVING SUCH SIZE, SHAPE, DIMENSIONS, BUTTINGS AND BOUNDINGS AS WILL BY REFERENCE TO THE AFORESAID PLAT MORE FULLY APPEAR.
>
> BEING THE SAME PROPERTY CONVEYED TO TANISHA M. GANTT BY DEED OF JOSEPH F. MOORMAN SAID DEED DATED SEPTEMBER 17, 2014 AND INTENDED TO BE RECORDED SIMULTANEOUSLY HEREWITH.

3.     Upon information and belief, the property has not been claimed exempt by Debtor.

4.     On or about December 4, 2020, Borrower entered into an MVR Homeowner Benefit Agreement ("Agreement") with MV Realty of South Carolina, LLC, a subsidiary of the Debtor pursuant to Exhibit G of Debtor's Schedules [D.E. 149-7]. A true and correct copy of the Agreement is attached hereto as **Exhibit "B"**.

5.     Based on the foregoing, Movant is informed and believes the Debtor is a junior lienholder.

**B.     PROCEDURAL HISTORY**

6.     On September 22, 2023, Debtor commenced the instant case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

7.     To date, Debtor has yet to file and/or confirm a Chapter 11 Plan.

**C.     LOAN STATUS**

8.     Borrower is indebted to Movant in the principal amount of $122,276.57, plus other fees and costs advanced by the mortgagee pursuant to the loan documents. The approximate payoff totals $133,206.85. See Affidavit of Indebtedness attached as Exhibit "B."

9.     The current monthly mortgage payment is $1,029.17. Payments pursuant to the Mortgage have been in default and remain in default since January 1, 2023.

10.    Movant's security interest in the subject property is being significantly jeopardized

by the Borrower's failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

### III.    ARGUMENT

**1.    Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(1).**

11.    Relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." *See In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008) (citing, *In re Dixie Broad., Inc*. 871 F.2d 1023, 1026 (11th Cir. 1989); *See also, e.g., In re Jefferson County, Alabama*, 484 B.R. 427 (Bankr. N.D. Ala. 2012). A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986); *In re Ellis*, 60 B.R. 432 (B.A.P. 9th Cir. 1985).

12.    Here, Movant is not adequately protected as Borrower failed to make payments owed on the Note. The contractual default totals $11,187.09, which continues to increase. As a result, Borrower has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986). Further, by failing to pay the Note and/or taxes and insurance, Borrower is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). *In re Three Tuns, Inc.*, 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

13.    Further, Debtor is a junior lienholder, not a Borrower under the loan documents with Movant. As Debtor is a junior lienholder it retains its right under applicable state law, including lien priority. Movant <u>does not</u> believe the Debtor currently owns the Property. As a result, the Property is not property of the Bankruptcy Estate and relief is appropriate under

§362(d)(1).

**2.    Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(A).**

14.    Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); *In re Stewart*, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection *per se*. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. *See In re Senior Care Properties, Inc.*, 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has generally been held to be insufficient. *In re Big Dog II, LLC*, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

15.    Here, the value of the Property is $128,877.00 (See Exhibit C). Movant's lien totals $133,206.85. As a result, there is little to no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

## IV.    CONCLUSION

1.    Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

2.    Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

3.    Movant hereby seeks attorneys' fees in the amount of $1,050.00 and costs in the amount of $188.00 incurred in filing this Motion for Relief from the Automatic Stay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum or, in the alternative, that Debtor be directed to make regular cash payments that would adequately protect Movant's interest, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtor be required to pay Movant's attorneys' fees and costs incurred in filing this Motion, that Debtor be required to segregate and account for

Movant's cash collateral, that Movant be permitted to communicate with Debtor for the purposes stated above, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

Wanda D. Murray
Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing Motion for Relief from the Automatic Stay or for Adequate Protection to be served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**

Michael D. Seese, Esq.
mseese@seeselaw.com

**DEBTOR**
**(via US mail)**

MV Realty PBC, LLC
815 Broken Sound Parkway
Suite 140
Boca Raton, FL 33487

**UNITED STATES TRUSTEE**
**(via electronic notice)**

Department of Justice
USTPRegion21.MM.ECF@usdoj.gov

**20 LARGEST UNSECURED**
**CREDITORS LIST:**

777 Partners
600 Brickell Avenue
19th Floor
Miami, FL 33131

Advance I, LLC
2321 Club Meridian Drive
Suite B
Okemos, MI 48864

All Star Notaries, LLC
6615 W Boynton Beach Blvd
#394
Boynton Beach, FL 33437

Carpenter Lipps & Leland LLP
280 Plaza Suite 1300
280 North High Street
Columbus, OH 43215

Covington & Burling, LLP
One City Center
850 Tenth Street,
NW Washington, DC 20001

Craft Recruiting, LLC
197M Boston Post Rd W
#321 Marlborough, MA 01752

DLA Piper, LLP
200 S Biscayne Blvd, Suite 2500
Miami, FL 33131

DOT818, LLC
550 N Brand Blvd. 20th Floor
Glendale, CA 91203

FedEx
942 S. Shady Grove Road
Memphis, TN 38120

Foley & Lardner, LLP
One Independent Drive
Suite 1300
Jacksonville, FL 32202

Goodwood, Inc.
212 King Street West
Suite 200
Toronto ON M5H 1K5 Canada

Haynsworth Sinker
201 Maint Street, 22nd Floor
Columbia, SC 29201

Hoffman Alvary & Company, LLC
Seven Wells Avenue
Newton Center, MA 02459

Holland & Knight
PO Box 936937
Atlanta, GA 31193

Kelly and Associates, Inc.
818 Cennecticut Ave NW
FL 11
Washington, DC 20006

Lewis Roca
201 E Washington Street
Suite 1200 Phoenix, AZ 85004

Nelson Mullins One Wells Fargo Center
23rd Floor
301 S. College Street
Charlotte, NC 28202

Pashman Stein Walder Hayden
21 Main Street, Suite 200
Hackensack, NJ 07601

Tier2Tek Ltd
601 16th Street Suite C#261
Golden, CO 80401

Wachtell Lipton Rosen & Katz
51 West 52nd Street
New York, NY 10019

and the Local Rule 1007(d) Parties in Interest List.

Dated: November 28, 2023

Wanda D. Murray
Bar No.: 566381
Aldridge Pite, LLP
Attorney for Movant
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385

MIN: ████████████████          Loan Number: ████████████████

## NOTE

FHA Case No. ████████████████

SEPTEMBER 17, 2014            CORONA                    CALIFORNIA
    [Date]                     [City]                     [State]

102 SAINT BENETS PLACE, SUMMERVILLE, SOUTH CAROLINA 29485
                         [Property Address]

### 1.  PARTIES

"**Borrower**" means each person signing at the end of this Note, and the person's successors and assigns.
"**Lender**" means  PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., A
CALIFORNIA CORPORATION                                and its successors and assigns.

### 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED TWENTY-SIX THOUSAND SIX HUNDRED SIXTY-THREE AND
00/100                                    **Dollars (U.S. $  126,663.00**         ),
plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of  FOUR AND 750/1000                            percent
(     4.750 %) per year until the full amount of principal has been paid.

### 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the  1st  day of each month beginning
on  NOVEMBER 1, 2014                . Any principal and interest remaining on the   1st    day of
OCTOBER, 2044                , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at  1265 CORONA POINTE COURT, SUITE 301, CORONA,
CALIFORNIA 92879

, or at such other place
as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $  660.73               .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

Mortgage Lender/Servicer: PARAMOUNT RESIDENTIAL MORTGAGE GROUP,
INC. NMLS #

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09                         Page 1 of 3

DocMagic *EForms*
www.docmagic.com

**Composite Exhibit A**

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5.    BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.    BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                    percent (    4.000   %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.    WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

**Composite Exhibit A**

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
TANISHA M GANTT          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Loan Originator: Maria K Rossi, NMLSR ID ███████
Loan Originator Organization: Paramount Residential Mortgage Group, Inc.,
NMLSR ID ██████

*[Sign Original Only]*

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/09                    Page 3 of 3                    DocMagic *eForms*
                                                                    www.docmagic.com

**Composite Exhibit A**

## ALLONGE

Loan Number: ██████████

Loan Date: SEPTEMBER 17, 2014

Borrower(s): TANISHA M GANTT

Property Address: 102 SAINT BENETS PLACE, SUMMERVILLE, SOUTH CAROLINA 29485

Principal Balance: $126,663.00

**PAY TO THE ORDER OF**

**Without Recourse**

Company Name: PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., A CALIFORNIA

CORPORATION

Lori Miller

Director Loan Administration

By _____    _____
                                      (Title)

DocMagic *eForms*
www.docmagic.com

**Composite Exhibit A**

Recording Date: 09/24/2014        Instrument: 9        Book: 9447   Page: 1-12

FILED-RECORDED
  RMC / ROD

2014 Sep 24 AM 8:59:56

    DORCHESTER COUNTY
SC Deed Rec Fee:  .00
Dor Co Deed Rec Fee:  .00
Filing Fee:  17.00
Exemption #:
    MARGARET L. BAILEY
       Register of Deeds



THIS PAGE IS HEREBY ATTACHED AND MADE PART OF
THE PERMANENT RECORD OF THIS DOCUMENT. IT IS
NOT TO BE DETACHED OR REMOVED AND MUST BE
CITED AS THE FIRST PAGE OF THE RECORDED
DOCUMENT. THE TOP OF THE PAGE IS TO BE USED FOR
RECORDING PURPOSES AND IS NOT TO BE USED FOR
ANY OTHER PURPOSE.

REGISTER OF DEEDS
DORCHESTER COUNTY SOUTH CAROLINA
MARGARET L. BAILEY, REGISTER
POST OFFICE BOX 38
ST. GEORGE, SC 29477
843-563-0181 or 843-832-0181

**Composite Exhibit A**

After Recording Return To:
PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.
1265 CORONA POINTE COURT
CORONA, CALIFORNIA 92879
Loan Number: ████████████

**FILED/RECORDED**
September 24, 2014
DORCHESTER COUNTY
REGISTER OF DEEDS

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE

| FHA CASE NO. |
| --- |
| ████████ |

**MIN:** ████████████

THIS MORTGAGE ("Security Instrument") is given on    SEPTEMBER 17, 2014
The mortgagor is   TANISHA M GANTT A SINGLE WOMAN

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS is the nominee for Lender**, as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.   PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.
("Lender")
is organized and existing under the laws of  CALIFORNIA                                                    ,
and has an address of  1265 CORONA POINTE COURT, SUITE 301, CORONA,
CALIFORNIA 92879
Borrower owes Lender the principal sum of  ONE HUNDRED TWENTY-SIX THOUSAND SIX
HUNDRED SIXTY-THREE AND 000/1000         Dollars (U.S. $ 126,663.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  OCTOBER 1, 2044    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in          Dorchester          County,
South Carolina:

Weeks & Irvine, LLC
106 West 7th North Street
Summerville, SC 29483

Mortgage Lender/Servicer: PARAMOUNT RESIDENTIAL MORTGAGE GROUP,
INC. NMLS # ████████
FHA SOUTH CAROLINA MORTGAGE - MERS
SCMTGZ.FHA  08/23/12                           Page 1 of 8                           *DocMagic eForms*
                                                                              www.docmagic.com

**Composite Exhibit A**

SEE EXHIBIT ''A'' ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.
A.P.N.: 154-03-02-006

which has the address of                    102 SAINT BENETS PLACE
                                                    [Street]

       SUMMERVILLE           , South Carolina      29485       ("Property Address"):
          [City]                                  [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2.    Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements

**Composite Exhibit A**

or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3.  Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4.  Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA SOUTH CAROLINA MORTGAGE - MERS
SCMTGZ.FHA  08/23/12                                    Page 3 of 8                          DocMagic *eForms*
                                                                                            www.docmagic.com

**Composite Exhibit A**

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

FHA SOUTH CAROLINA MORTGAGE - MERS
SCMTGZ.FHA  08/23/12                          Page 4 of 8                          DocMagic *eForms*
                                                                                  www.docmagic.com

**Composite Exhibit A**

**(d)   Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)   Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                              from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

   **10.   Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

   **11.   Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

   **12.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

   **13.   Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

   **14.   Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

   **15.   Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

---

# Composite Exhibit A

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Homestead Waiver.** Borrower waives all rights of homestead exemption in the Property to the extent allowed by applicable law.

FHA SOUTH CAROLINA MORTGAGE - MERS
SCMTGZ.FHA  08/23/12                               Page 6 of 8                               DocMagic eForms
www.docmagic.com

**Composite Exhibit A**

**21. Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in § 12-37-250 of the South Carolina Code of Laws.

**22. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
TANISHA M GANTT                -Borrower

FILED/RECORDED
September 24, 2014
DORCHESTER COUNTY
REGISTER OF DEEDS

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Signed, sealed and delivered in the presence of:

Witness  Mylena Vacheva

Witness  Summer Y. Reyes

FHA SOUTH CAROLINA MORTGAGE - MERS
SCMTGZ.FHA  08/23/12                    Page 7 of 8                    DocMagic eForms
                                                                      www.docmagic.com

**Composite Exhibit A**

——————————— [Space Below This Line For Acknowledgment] ———————————

State of SOUTH CAROLINA

County of Dorchester

The foregoing instrument was acknowledged before me this ___ September 17, 2014 ___

by ___ TANISHA M GANTT ___

_____

_____

_____
Signature of Person Taking Acknowledgment

_____
Title or Rank    Notary

_____
Serial Number, if any

I, __Milena Dacheva__ _____, hereby witnessed

TANISHA M GANTT
_____

_____ (the Borrower/mortgagor)

sign, seal, and as his/her act and deed, deliver the within written mortgage, and that I witnessed the execution thereof.

Witness   Milena Dacheva

Loan Originator: Maria K Rossi, NMLSR ID ███████
Loan Originator Organization: Paramount Residential Mortgage Group, Inc., NMLSR ID ███████

FHA SOUTH CAROLINA MORTGAGE - MERS
SCMTGZ.FHA  08/23/12                          Page 8 of 8                          DocMagic eForms
                                                                                  www.docmagic.com

**Composite Exhibit A**

FHA Case No.: ▉▉▉▉▉▉▉▉
Loan Number ▉▉▉▉▉▉▉

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          17th          day of
SEPTEMBER, 2014                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to  PARAMOUNT
RESIDENTIAL MORTGAGE GROUP, INC., A CALIFORNIA CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:

102 SAINT BENETS PLACE, SUMMERVILLE, SOUTH CAROLINA 29485

[Property Address]

The Property is part of a planned unit development ("PUD") known as:

SUMMERVILLE    PLACE

[Name of Planned Unit Development]

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included within the term
"extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to
Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard
insurance coverage on the Property is deemed satisfied to the extent that the required coverage
is provided by the Owners' Association policy.  Borrower shall give Lender prompt notice of any
lapse in required hazard insurance coverage and of any loss occurring from a hazard.  In the event
of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to
the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.



**Composite Exhibit A**

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)  
TANISHA M GANTT                     -Borrower

_____ (Seal)  
                                   -Borrower

_____ (Seal)  
                                   -Borrower

_____ (Seal)  
                                   -Borrower

_____ (Seal)  
                                   -Borrower

_____ (Seal)  
                                   -Borrower

**Composite Exhibit A**

# EXHIBIT "A"
## LEGAL DESCRIPTION

ALL that certain piece, parcel or lot of land, situate, lying and being in the Town of Summerville, County of Dorchester, State of South Carolina, and being shown and designated as Lot 6, Block A, Summerville Place Subdivision, Phase 1-A, as shown on a plat made by Trico Surveying, Inc., dated January 7, 1988, and entitled "Plat Showing Summerville Place Subdivision, Phase 1-A, A 17.966 ac. Tract of Land, Property of the John Crosland Company, located in the Town of Summerville, Dorchester County, South Carolina," which said plat is recorded in the Register of Deeds Office for Dorchester County in Plat Cabinet F, Slide 337.  Said lot having such size, shape, dimensions, buttings and boundings as will by reference to the aforesaid plat more fully appear.

Being the same property conveyed to Tanisha M. Gantt by deed of Joseph F. Moorman said deed dated September 17, 2014 and intended to be recorded simultaneously herewith.

TMS:  154-03-02-006

**Composite Exhibit A**

BK 9837  PG 347

███████████████████████████████████

Recording Date: 08/31/2015          Instrument: 207          Book: 9837   Page: 347-348

FILED-RECORDED
RMC / ROD

2015 Aug 31 PM 1:42:52

    DORCHESTER COUNTY
SC Deed Rec Fee:  .00
Dor Co Deed Rec Fee:  .00
Filing Fee:  6.00
Exemption #:
    MARGARET L. BAILEY
      Register of Deeds



THIS PAGE IS HEREBY ATTACHED AND MADE PART OF
THE PERMANENT RECORD OF THIS DOCUMENT. IT IS
NOT TO BE DETACHED OR REMOVED AND MUST BE
CITED AS THE FIRST PAGE OF THE RECORDED
DOCUMENT. THE TOP OF THE PAGE IS TO BE USED FOR
RECORDING PURPOSES AND IS NOT TO BE USED FOR
ANY OTHER PURPOSE.

**REGISTER OF DEEDS
DORCHESTER COUNTY SOUTH CAROLINA
MARGARET L. BAILEY, REGISTER
POST OFFICE BOX 38
ST. GEORGE, SC 29477
843-563-0181 or 843-832-0181**

**Composite Exhibit A**

BK 9887  PG 348

Recording Requested By &
When Recorded Mail To:
Paramount Residential Mortgage Group Inc.
1235 N. Dutton Avenue, Ste E
Santa Rosa, Ca 95402
(800) 696-8199

FILED/RECORDED
AUGUST 31, 2015
DORCHESTER COUNTY
REGISTER OF DEEDS

## Assignment of Deed of Trust

Property: 102 SAINT BENETS PLACE, SUMMERVILLE, SC 29485
Loan
MIN:                          MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems Inc., as nominee for Paramount Residential Mortgage Group, INC.** , its successors and assigns, hereby grants, assigns and hereby assign and transfer to:

**Paramount Residential Mortgage Group Inc.**
1235 N. Dutton Avenue, Ste E
Santa Rosa, CA 95401

Its successors or assigns, all its right, title and interest in and to a certain Mortgage dated **9/17/2014**, and executed by **Tanisha M Gantt, A Single Woman**, and recorded on **9/24/2014**, under Instrument No. **9**, Book # **9447**, Page # **1**, in the office of the Recorder of **Dorchester County**, State of **South Carolina**.

Mortgage Electronic Registration Systems, Inc., as nominee for Paramount Residential Mortgage Group, INC.

Dated: August **24**, 2015

By _____
Name: Jonathan Mildbrad
Title: Assistant Secretary

State of **IL**
County of **Cook**

On **8/24/2015**, before me, Patryk Sbotka Notary Public personally appeared Jonathan Mildbrad who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____

Notary Public

OFFICIAL SEAL
PATRYK SOBOTKA
Notary Public - State of Illinois
My Commission Expires Jan 23, 2019

Prepared By: Paramount Residential Mortgage Group Inc. 1235 N. Dutton Ave, Ste. E, Santa Rosa CA 95401

**Composite Exhibit A**

# MARGARET L BAILEY
## DORCHESTER COUNTY
## REGISTER OF DEEDS
201 Johnston Street ~ Saint George, SC 29477  (843) 563-0181

---

## *** THIS PAGE IS PART OF THE INSTRUMENT - DO NOT REMOVE ***

| | | | |
|---|---|---|---|
| **Instrument #:** | 2016906164 | | |
| **Receipt Number:** | 2610 | **Return To:** | BROCK/SCOTT PLLC |
| **Recorded As:** | ASSIGNMENT | | |
| **Recorded On:** | March 18, 2016 | | |
| **Recorded At:** | 03:41:31 PM | **Received From:** | BROCK/SCOTT PLLC |
| **Recorded By:** | KU | **Parties:** | |
| **Book/Page:** | RB 10144: 236 - 237 | Direct- GANTT, TANISHA M | |
| **Total Pages:** | 2 | Indirect- MORTGAGE ELECTRONIC REGISTRATION | |

---

## *** EXAMINED AND CHARGED AS FOLLOWS ***

**Recording Fee:**    $6.00

**Tax Charge:**    $0.00





Margaret Bailey - Register of Deeds

## Composite Exhibit A

Prepared by and return to:                    )
BROCK & SCOTT, PLLC                           )
3800 Fernandina Road, Suite 110               )
Columbia, SC 29210                            )
File No.: 15-16612                            )
MIN # ████████████                           )
MERS Phone No: 1-888-679-6377                 )

## CORRECTIVE ASSIGNMENT OF MORTGAGE

For valuable consideration received, the party of the first part <u>Mortgage Electronic Registration Systems, Inc. as nominee for Paramount Residential Mortgage Group, Inc., P.O. Box 2026 Flint, Michigan 48501-2026</u>, its successors and assigns (hereinafter referred to as "Assignor"), as holder of the referenced mortgage, does hereby grant, bargain, assign, transfer and set over unto the said party of the second part, <u>Paramount Residential Mortgage Group, Inc., 1235 N. Dutton Avenue, Ste E, Santa Rosa, CA 95401</u> (hereinafter referred to as "Assignee"), that certain mortgage executed by <u>Tanisha M. Gantt</u>, in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Paramount Residential Mortgage Group, Inc., its successors and assigns, <u>dated September 17, 2014 and recorded on September 24, 2014 in Book 9447 at Page 1</u>, Public Records of Dorchester County, State of South Carolina.

***This Corrective Assignment is made to correct the Assignment previously recorded on August 31, 2015 at Book 9887 and Page 347 in the Dorchester County Register of Deeds, due to missing two witness signatures.***

TO HAVE AND TO HOLD the same unto the said Assignee, its heirs, legal representatives, successors and assigns forever.

WHEREAS, the undersigned Assignor has executed this Assignment of Mortgage on this _____11_____ day of ___March___, 20 16

Witness signature
Printed Name of _Spencer Person_

Witness signature
Printed Name _Ramona Smith_

Mortgage Electronic Registration Systems, Inc. as nominee for Paramount Residential Mortgage Group, Inc., its successors and assigns

Signature: _____

Printed Name: Jennifer L Caulkins

Title:    Assistant Secretary

## ACKNOWLEDGMENT

State of _New Jersey_
County of _Mercer_
On ___March 11, 2016___ before me, ___Evelyn Deleon___
                                    (Here insert name and title of the officer)
personally appeared ___Jennifer L Caulkins, Assistant Secretary___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of ___New Jersey___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
_____Evelyn Deleon_____                          (Notary Seal)
Signature of Notary Public

EVELYN DELEON
My Commission Expires
2-11-2019
NOTARY
PUBLIC
ID #2442845
STATE OF NEW JERSEY

BROCK & SCOTT, PLLC
WESTPARK CENTER
3800 FERNANDINA ROAD
SUITE 110

# Composite Exhibit A

# MARGARET L BAILEY

## DORCHESTER COUNTY

## REGISTER OF DEEDS

201 Johnston Street ~ Saint George, SC 29477  (843) 563-0181

---

**\*\*\* THIS PAGE IS PART OF THE INSTRUMENT - DO NOT REMOVE \*\*\***

---

| | | | |
|---|---|---|---|
| **Instrument #:** | 2022030687 | | |
| **Receipt Number:** | 160287 | **Return To:** | PARAMOUNT RESIDENTIAL MTG |
| **Recorded As:** | MORTGAGE ASSIGNMENT | | |
| **Recorded On:** | December 16, 2022 | | |
| **Recorded At:** | 10:59:37 AM | **Received From:** | PARAMOUNT RESIDENTIAL MTG |
| **Recorded By:** | NW | **Parties:** | |
| **Book/Page:** | RB 14512: 59 - 62 | | Direct- GANTT, TANISHA M |
| **Total Pages:** | 4 | | Indirect- PARAMOUNT RESIDENTIAL MORTGAGE |

---

**\*\*\* EXAMINED AND CHARGED AS FOLLOWS \*\*\***

**Recording Fee:**    $10.00

**Tax Charge:**    $0.00





Margaret Bailey - Register of Deeds

# Composite Exhibit A

**When Recorded, Mail To:**
Paramount Residential Mortgage Group, Inc.
1265 Corona Pointe Court
Suite 301
Corona, CA 92879
Gantt 3254555472

**This instrument was prepared by:**
Sarah Bravo
Paramount Residential Mortgage Group, Inc.
1265 Corona Pointe Court
Suite 301
Corona, CA 92879
951-278-0000

_____ [Space Above This Line For Recorder's Use] _____

## ASSIGNMENT OF MORTGAGE

For value received, the undersigned holder of a Mortgage, **Paramount Residential Mortgage Group, Inc.** (herein "Assignor") whose address is **1265 Corona Pointe Court, Suite 301, Corona, CA 92879**, does hereby grant, sell, assign, transfer, and convey unto **Lakeview Loan Servicing, LLC, it's Successors and/or Assigns, whose address is 4425 Ponce de Leon Blvd., MS 5-251, Coral Gables, FL 33146** (herein "Assignee"), all beneficial interest under a certain Mortgage, dated **September 17, 2014,** made and executed by **Tanisha M Gantt a single woman,**

to **Paramount Residential Mortgage Group, Inc., 1265 Corona Pointe Court, Suite 301, Corona, CA 92879, as Mortgagee,**

recorded on **September 24, 2014,** as **Instrument No. 9, Book 9447, Page(s) 1-12** in the office of the **Dorchester County Recorder of Deeds, State of South Carolina**, on the following property:

**See legal description attached hereto and made a part hereof as Exhibit "A". APN #: 154-03-02-006**

Together with the note(s) and obligations therein described, the money due and to become thereon, with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **August 2, 2022.**

**Paramount Residential Mortgage Group, Inc. (Assignor)**

By: _____

Name (printed): ____ Kevin McHenry ____

Title: ____ Director of Loan Accounting ____

_____
Witness - Sarah Bravo

[AFFIX NOTARIAL ACKNOWLEDGEMENT]

_____
Witness - Rocio Flores Bravo

# Composite Exhibit A

# EXHIBIT "A"
# LEGAL DESCRIPTION

ALL that certain piece, parcel or lot of land, situate, lying and being in the Town of Summerville, County of Dorchester, State of South Carolina, and being shown and designated as Lot 6, Block A, Summerville Place Subdivision, Phase 1-A, as shown on a plat made by Trico Surveying, Inc., dated January 7, 1988, and entitled "Plat Showing Summerville Place Subdivision, Phase 1-A, A 17.966 ac. Tract of Land, Property of the John Crosland Company, located in the Town of Summerville, Dorchester County, South Carolina," which said plat is recorded in the Register of Deeds Office for Dorchester County in Plat Cabinet F, Slide 337. Said lot having such size, shape, dimensions, buttings and boundings as will by reference to the aforesaid plat more fully appear.

Being the same property conveyed to Tanisha M. Gantt by deed of Joseph F. Moorman said deed dated September 17, 2014 and intended to be recorded simultaneously herewith.

TMS: 154-03-02-006

**Composite Exhibit A**

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ RIVERSIDE _____ )

On ___ August 2, 2022 ___ before me, ___ ARDIS JACKSON III, NOTARY PUBLIC ___

(insert name and title of the officer)

personally appeared ___ Kevin McHenry for Paramount Residential Mortgage Group, Inc ___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ARDIS JACKSON III
COMM. #2257264
Notary Public - California
Riverside County
My Comm. Expires Sep. 3, 2022
NRO1

Signature _____    (Seal)

**Composite Exhibit A**

# MARGARET L BAILEY

## DORCHESTER COUNTY

### REGISTER OF DEEDS

201 Johnston Street ~ Saint George, SC 29477  (843) 563-0181

---

**\*\*\* THIS PAGE IS PART OF THE INSTRUMENT - DO NOT REMOVE \*\*\***

---

**\*\*\* ELECTRONICALLY RECORDED DOCUMENT \*\*\***

---

| | | | |
|---|---|---|---|
| **Instrument #:** | 2022024897 | | |
| **Receipt Number:** | 156033 | **Return To:** | |
| **Recorded As:** | EREC-MORTGAGE | | |
| **Recorded On:** | September 26, 2022 | | |
| **Recorded At:** | 03:03:33 PM | **Received From:** | SIMPLIFILE |
| **Recorded By:** | NW | **Parties:** | |
| **Book/Page:** | RB 14399: 134 - 139 | Direct- GANTT, TANISHA | |
| **Total Pages:** | 6 | Indirect- MV REALTY OF SOUTH CAROLINA LLC | |

---

**\*\*\* EXAMINED AND CHARGED AS FOLLOWS \*\*\***

**Recording Fee:**  $25.00

**Tax Charge:**  $0.00





Margaret Bailey - Register of Deeds

# EXHIBIT B

Memorandum of Agreement* Affecting Real Property
between
MV Realty and Tanisha Gantt

 *This document was erroneously labeled as mortgage and was not intended to create a mortgage lien.



STATE OF SOUTH CAROLINA )                                    MORTGAGE
                                                     )
COUNTY OF *Dorchester*   )

THIS MORTGAGE, executed this *4th* day of *December*, 20*20*, by Tanisha Gantt

("Property Owner"), whose mailing address is 102 Saint Benets Place, Summerville, SC, 29485, to MV Realty of South Carolina, LLC,

a South Carolina limited liability company ("Company"), whose mailing address is 1156 Bowman Road, Suite 200, Mount

Pleasant, SC 29464.

## WITNESSETH:

WHEREAS, Property Owner and Company are parties to that certain MVR Homeowner Benefit Agreement dated on or about the date hereof, which by reference is made a part hereof to the same extent as though set out in full herein (the "HBA"), the term of which expires on the earlier of: (i) the date the Property is sold or transferred in accordance with the HBA, and (ii) the date that is forty (40) years after the Commencement Date of the HBA; and (iii) the date that this HBA is terminated in accordance with Section 3 of the HBA.

WHEREAS, Property Owner agrees to secure its obligations under the HBA with this Mortgage.

NOW, THEREFORE, (a) to secure the performance and observance by Property Owner of all covenants and conditions contained in the HBA, and any amounts that may be due under the HBA, plus all charges and expenses of collection incurred by Company, including court costs, and reasonable attorneys' fees; and (b) also in order to charge the properties, interests and rights hereinafter described with such payment, performance and observance; and (c) for and in consideration of the sum of six hundred fifteen and No/100 ($615) Dollar paid by Company to Property Owner this date, and for other valuable consideration, the receipt of which is acknowledged, Property Owner does hereby grant, bargain, sell, alien, remise, release, convey, assign, transfer, mortgage, hypothecate, pledge, deliver, set over, warrant and confirm unto Company, its successors and assigns all right, title and interest of Property Owner in and to the real property described in Exhibit A attached hereto and made a part hereof, which together with the property described below is hereinafter referred to as the "Property".

TOGETHER WITH:

(1)      all and singular rights, members, privileges, easements, hereditaments and appurtenances belonging or in any way incident or appertaining to the above-described real property; all buildings and improvements now or hereafter situated thereon; and all fixtures now or hereafter attached thereto; and

(2)      All fixtures, fittings, furnishings, appliances, apparatus, equipment, and machinery; all other fixtures and personal property of whatever kind and nature at present contained in or hereafter placed in any building standing on the above-described real property; and all renewals or replacements thereof or articles in substitution thereof; and all proceeds and profits thereof and all of the estate, right, title and interest of the Property Owner in and to all property of any nature whatsoever, now or hereafter situated on the above-described real property and improvements or intended to be used in connection with the operation thereof.

TO HAVE AND TO HOLD all and singular the Property unto Company and the successors and assigns of Company forever.

PROVIDED ALWAYS, nevertheless, and it is the true intent and meaning of Property Owner and Company, that if Property Owner pays or causes to be paid to Company the sums secured hereby, the estate hereby granted shall cease, determined and be utterly null and void; otherwise said estate shall remain in full force and effect.

IT IS AGREED that Property Owner shall be entitled to hold and enjoy the Property until a Default as herein defined has occurred.

Haynsworth Sinkler Boyd
1201 Main Street, 22nd Floor
Columbia, SC 29201



# EXHIBIT B

1.

### DEFAULT AND REMEDIES

1.1.    Default. The occurrence of an event of default under the HBA not cured within the cure period (if any) provided in the HBA shall be deemed a Default under this Mortgage.

1.2.    Remedies. Upon the occurrence of a Default as hereinabove defined, Company may, without notice to Property Owner, declare all sums secured by this Mortgage immediately due and payable and may commence proceedings to collect such sums, foreclose this Mortgage and sell the Property. The remedies provided to Company in this paragraph shall be in addition to and not in lieu of any other rights and remedies provided in this Mortgage or at law or in equity.

2.

### MISCELLANEOUS

2.1.    Construction. This Mortgage shall be construed and enforced in accordance with the laws of South Carolina. This Mortgage shall be binding upon the Property Owner and the heirs, successors and assigns of Property Owner and shall inure to the benefit of Company and the heirs, successors and assigns of Company.

2.2.    Notices. Any notice given by either party hereto to the other party shall be in writing and shall be signed by the party giving notice. Any notice or other document to be delivered to either party hereto by the other party shall be deemed delivered if mailed postage prepaid to the party to whom directed at the address of such party stated above. This paragraph shall not be deemed to prohibit any other manner of delivering a notice or other document.

2.3.    Jurisdiction. Property Owner submits to the jurisdiction of any court of competent jurisdiction within the State of South Carolina. Property Owner further agrees to comply with all requirements necessary to give such court in personam jurisdiction and agrees that service of process may be accomplished by, in addition to any other lawful means, certified mail, return receipt requested, to the Property Owner at Property Owner's address set forth above or any new address of which Company has been notified by Property Owner in writing.


[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]



# EXHIBIT B

2.4.    DISPUTE RESOLUTION. ANY AND ALL DISPUTES, CLAIMS, OR CONTROVERSIES WHATSOEVER BETWEEN SELLER AND BROKER, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER LEGAL RIGHT TO CLAIM, INCLUDING ALLEGED VIOLATION OF CONSUMER OR PRIVACY LAWS, SHALL BE REFERRED TO AND RESOLVED EXCLUSIVELY BY BINDING ARBITRATION AS STATED IN THE HBA, WHICH ARBITRATION PROVISIONS ARE HEREBY INCORPORATED BY REFERENCE.

2.5.    Waiver of Appraisal Rights. The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE PROPERTY.

IN WITNESS WHEREOF, Property Owner has caused this Mortgage to be executed the day and year first above written.

Signed, sealed and delivered in the presence of:

Witness #1 _Christopher Drayton_

Witness #2 _Greg Smith_

Tanisha Gantt

Name _____

STATE OF SOUTH CAROLINA    )
COUNTY OF _Dorchester_       )
                             )

I, the undersigned Notary Public for the State of _South Carolina_, do hereby certify that _Tanisha Gantt_ the Property Owner of 102 Saint Benets Place, Summerville, SC, 29485, personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Sworn to and subscribed before me this _4th_ day of _December_, 202_0_

Sworn to and subscribed before me this _4th_ day of _December_, 202_0_

_____ (L.S.)
Printed Name of Notary: _Christopher Drayton_
Notary Public, State of _South Carolina_
My Commission Expires: _3/18/2029_



CHRISTOPHER DRAYTON
NOTARY PUBLIC
SOUTH CAROLINA
MY COMMISSION EXPIRES 03-18-29

# EXHIBIT B

**Legal Description**
**"Exhibit A"**

All that certain piece, parcel or lot of land, situate, lying and being in the Town of Summerville, Count of Dorchester, State of South Carolina, and being shown and designated as Lot 6, Block A, Summerville Place Subdivision, Phase 1-A, as shown on a plat made by Trico Surveying, Inc., dated January 7, 1988, and entitled "Plat Showing Summerville Place Subdivision, Phase 1-A, A 17.966 ac. Tract of Land, Property of the John Crosland Company located in the Town of Summerville, Dorchester County, South Carolina," which said plat is recorded in the Register of Deeds Office for Dorchester County in Plat Cabinet F, Slide 337. Said lot having such size, shape, dimensions, buttings and boundings as will by reference to the aforesaid plat more fully appear.

DERIVATION: This being the same property conveyed to Tanisha M. Gantt by Deed of Joseph F. Moorman, dated September 17, 2014 and recorded September 24, 2014, in Book 9446, at Page 351 in the Office of the Register of Deeds of Dorchester County, South Carolina.

C:\Users\bhenderson\Desktop\Legal Description - Georgetown - Simmons.docx

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

IN RE:                                                    Case No.23-17590-EPK

MV REALTY PBC, LLC,                        Chapter 11

                    Debtor.

_____/

**AFFIDAVIT IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

STATE OF
COUNTY OF

      **BEFORE ME**, a notary public duly authorized to take acknowledgements and administer oaths, on this day personally appeared Janet Eldemire after having been duly cautioned and sworn under oath, deposes and states as follows:

      1.    I am making this Affidavit in connection with and in support of the Motion for Relief from Stay filed by Lakeview Loan Servicing, LLC, a secured creditor in the above-styled bankruptcy proceeding.

      2.    Flagstar Bank ("Flagstar") services the loan for Lakeview Loan Servicing, LLC ("Movant"), the holder of the subject Note and Mortgage by way of assignment.

      3.    I am a **Bankruptcy Supervisor** (Job Title) for Flagstar. In said capacity, I have access to the computerized account records and have personal knowledge of the facts stated herein.

      4.    I have authority to make this affidavit.  Further, I have personally reviewed Flagstar and Movant's records and make this Affidavit based upon personal knowledge obtained therein.

      5.    I am familiar with the loan made on September 17, 2014 by Paramount Residential Mortgage Group, Inc. to Tanisha M Gantt in the principal amount of $126,663.00 ("the Loan"), which is the basis for Movant's secured status. The property located at **102 Saint Benets Place, Summerville, South Carolina 29485** has been secured by the Note and Mortgage. A true and correct copy of the Note and Mortgage as attached to the Motion for Relief are herewith adopted by reference and made part thereof.

      6.    In performance of its duties as servicer of the Loan for Movant, Flagstar maintains a computerized account of the Loan including all receipts and disbursements, charges, and credits.

      7.    The amount of indebtedness and the nature and extent of default set forth in the Motion for Relief is derived from the computerized account of the Loan.

      8.    Said records are made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters, the records are kept in the

**EXHIBIT C**

Affidavit of Indebtedness
Case No. 23-17590-EPK

course of Flagstar's regularly conducted activity and are made by Flagstar as a regular practice.

9. In connection with this case, I have reviewed the computerized account records, loan documents, and other business records of Flagstar and Movant.

10. As of November 20, 2023, the note and mortgage payments are in default as the Borrower, is contractually due for the January 1, 2023, payment, and has/have failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the note.

11. Flagstar has declared the full amount payable under the note and mortgage to be due.

12. On examination of these business records, it is determined that there is now due and owing to the Movant upon the note and mortgage an outstanding principal balance of $122,276.57, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

13. This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Flagstar and Movant's books and business records, and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing if necessary.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
AFFIANT

STATE OF: Florida

COUNTY OF: Duval

The foregoing instrument was sworn before me this _28th_ day of _November_, _2023_ by _Janet Eldemire_, who is personally known to me and who did take an oath.

_____
NOTARY PUBLIC

My Commission Expires: _12-12-2026_

SHARON DENESE SMITH
Notary Public
State of Florida
Comm# HH340302
Expires 12/12/2026

**EXHIBIT C**

# INDEBTEDNESS
# WORKSHEET

### DEBT AS OF THE PETITION
### DATE

**A.**    **Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date: $132,332.90**

    1.    Amount of principal: $122,276.57

    2.    Amount of interest: $3,702.81

    3.    Amount of escrow (taxes and insurance): $2,725.90

    4.    Amount of forced placed insurance expended by movant: $0.00

    5.    Amount of attorneys' fees billed to debtor(s) pre-petition: $3,331.32

    6.    Amount of pre-petition late fees, if any, billed to  debtor(s): $181.44

    7.    Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above: $114.86

**B.**    **Contractual interest rate:  3.750%**

**EXHIBIT C**

## <u>AMOUNT OF ALLEGED POST-PETITION DEFAULT</u>
### (AS OF 11/20/2023)

**C.**    **Date last payment was received:  <u>N/A</u>**

**D.**    **Alleged total number of payments due postpetition from filing of petition through payment due on: <u>November 1, 2023; two</u> <u>(2)</u>.**

**E.**    **All post-petition payments alleged to be in default:**

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| 10/1/2023 | $1,029.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/1/2023 | $1,029.17 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Totals:** | **$2,058.34** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |

**F.**    **Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion: $<u>1,050.00</u>**

**G.**    **Amount of movant's filing fee for this motion: $<u>188.00</u>**

**H.**    **Other attorneys' fees billed to debtor post-petition: $<u>0.00</u>**

**I.**    **Amount of movant's post-petition inspection fees: $<u>0.00</u>**

**J.**    **Amount of movant's post-petition appraisal broker's price opinion: $<u>0.00</u>**

**K.**    **Amount of forced placed insurance or insurance provided by the movant post-petition: $<u>0.00</u>**

**L.**    **Sum held in suspense by movant in connection with this contract, if applicable: $<u>0.00</u>**

**M.**    **Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc. (itemize each charge): $<u>0.00</u>**

**EXHIBIT C**

# Real Property/Mobile Home Inquiry

<u>&lt;&lt; Back</u>

## CAMA Parcel Summary

**Account#**  R0041309

**TMS#** 1540302006000

**Primary Parcel Address**  102 ST BENETS PL

**Total Land & Improvements**  $128,877

**This parcel is receiving a residential exemption.**

## Owner Information

**Owner**  GANTT TANISHA M

**Owner Address**  102 SAINT BENETS PLACE
                  SUMMERVILLE, SC 29485

**Plat Book & Page**  F 337

**Instrument #**

## Legal Information

| | |
|---|---|
| **Building Count**  1 | **Zoning Code**  PUD_SV |
| **Lot**  06 | **Tax District**  207 |
| **Gov Lot** | **Subdivision**  SUMMERVILLE PLACE |
| **Block**  A | **Phase**  0 |
| **Tract** | **Other** |
| | **Short Legal** |

## Last Sale Information

**Deed Book #**  009446

**Deed Page #**  351

**Sale Price**  $129,000

**Sale Date**  09/17/2014

**Grantor**  MOORMAN JOSEPH F

**Grantee**  GANTT TANISHA M

**Recorded Date**  09/24/2014

| IMPROVEMENTS | LAND DETAILS | ASSESSMENT DETAILS | SALES HISTORY |
|---|---|---|---|

**EXHIBIT D**

Case 23-17590-EPK   Doc 287   Filed 11/28/23   Page 43 of 43

## Assessment Details

| Tax Year | Abst Desc | Acres | Actual Value | Assm Ratio | Cap Value | Taxable Value | Taxable Assessed Value |
|---|---|---|---|---|---|---|---|
| 2023 | Improvement Residential 4 Pct | 0 | <$88,877 | 0.04 | $98,885 | $88,877 | $3,560 |
| 2023 | Land Residential 4 Pct | 0 | <$40,000 | 0.04 | $46,000 | $40,000 | $1,600 |

BACK

**EXHIBIT D**