**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 23-17590 (EPK) |
| MV REALTY PBC, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**EPIQ CORPORATE RESTRUCTURING, LLC'S**
**MOTION FOR (I) EQUITABLE APPORTIONMENT OF**
**PROFESSIONAL FEES AND EXPENSES (II) RELATED RELIEF**

Epiq Corporate Restructuring, LLC ("Epiq"), by its undersigned counsel, respectfully submits this motion (the "Motion") for entry of an order directing the equitable apportionment of professional fees and expenses paid by the above-captioned debtors (the "Debtors") and granting related relief. In support of this Motion, Epiq states as follows:

**PRELIMINARY STATEMENT**

1. In September 2023, the Debtors commenced chapter 11 cases (the "Chapter 11 Cases") after numerous states brought actions against the Debtors alleging, among other things, that the Debtors engaged in telemarketing violations and unfair or deceptive trade practices.

---

[1] The last four digits of the Debtors' federal tax identification numbers are: MV Realty, PBC LLC (6755), MV Realty Holdings, LLC (3483), MV Receivables II, LLC (9368), MV Receivables III, LLC (6793), MV Realty PBC, LLC (Pennsylvania) (7301), MV Realty of South Carolina, LLC (7322), MV Realty of North Carolina, LLC (3258), MV of Massachusetts, LLC (0864), MV Realty of Illinois, LLC (8814), MV Realty of Arizona, LLC (2725), MV Realty of Connecticut, LLC (8646), MV Realty PBC, LLC (Georgia) (6796), MV Realty of New Jersey, LLC (5008), MV Realty of Washington, LLC (7621), MV Realty of Maryland, LLC (9945), MV Realty of Virginia, LLC (2129), MV Realty of Tennessee, LLC (7701), MV Realty of Wisconsin, LLC (2683), MV Realty of Nevada, LLC (0799), MV Realty of Oregon, LLC (3046), MV Realty of Utah, LLC (4543), MV Realty of Minnesota, LLC (1678), MV Realty of Indiana, LLC (3566), MV Realty of Missouri, LLC (6503), MV Homes of New York, LLC (2727), MV Realty of Idaho, LLC (8185), MV Realty of Alabama, LLC (6462), MV Realty of Colorado, LLC (1176), MV Realty of Oklahoma, LLC (8174), MV Realty of Louisiana, LLC (3120), MV Realty of Kansas, LLC (2304), MV Realty of Kentucky, LLC (2302), MV Realty of California (7499), MV Realty of Texas, LLC (7182), MV Realty of Michigan, LLC (5280), and MV Realty of Ohio, LLC (0728).

2. To properly administer the Chapter 11 Cases, the Debtors retained various professionals, including Epiq, to assist in their restructuring efforts. In particular, the Debtors retained Epiq to: (i) serve as the authorized repository for all proofs of claim filed, (ii) maintain a case website, (iii) serve notices and other documents filed by estate professionals, and (iv) maintain a hotline for the purpose of answering case-related questions. As noted in the Employment Application (as defined below), the services provided by Epiq relieved the Office of the Clerk of the Court for the United States Bankruptcy Court of "the burden of serving notices on creditors and other parties in interest, as well as administering claims filed against the Debtors." Employment Application, ¶ 44.

3. Epiq honored its obligations to the Debtors during the Chapter 11 Cases by providing critical noticing and administrative services at the direction of Debtors' counsel, including service of the Debtors' filings on thousands of creditors and interested parties. However, despite having the authority to pay for Epiq's services without further order of the Court, the Debtors paid only a small fraction of Epiq's fees and costs during the Chapter 11 Cases, all while ignoring Epiq's requests for payment and ensuring that other estate professionals were paid substantial sums.

4. After failing to pay numerous invoices during the Chapter 11 Cases, the Debtors acknowledged the substantial sum they owed Epiq when they submitted, with the assistance of their counsel, an agreed order that was entered by the Court [ECF No. 1630] (the "Agreed Fee Order") allowing Epiq an administrative expense of $525,000.00 for the unpaid amounts owed to Epiq for services rendered during the Chapter 11 Cases that the Debtors agreed to pay in ten (10) monthly installments of $52,500.00 starting on October 1, 2024 and ending on July 1, 2025. Of the total amount owed under the Agreed Fee Order, approximately $325,000.00 was attributable to hard costs (*e.g.*, postage fees) incurred by Epiq on behalf the Debtors during the Chapter 11 Cases.

5. Despite submitting the Agreed Fee Order to the Court providing for payment to Epiq, the Debtors did **not** pay a single dollar to Epiq during the 10-month payment period that followed entry of the Agreed Fee Order.

6. As discussed in greater detail herein, the Debtors did not merely ignore their payment obligations under the Agreed Fee Order. Rather, documents provided by the Debtors demonstrate that, while ignoring their Court-ordered payment obligations to Epiq, the Debtors routinely made substantial payments to other estate professionals. In fact, based upon a review of the Debtors' documentation, it appears that multiple professionals have either been paid in full or in excess of the amounts approved by the Court in the Chapter 11 Cases. One professional received regular payments (including at intervals as frequently as bi-weekly) totaling over $1.3 million within three months of dismissal of the Chapter 11 Cases. Additionally, it appears another professional received payment for which no Court approval was ever obtained.

7. As a result of the Debtors' failure to comply with the Agreed Fee Order and payment scheme favoring nearly every other estate professional, Epiq seeks entry of an order directing equitable apportionment of professional fees and expenses paid to date to ensure that administrative creditors are treated fairly for services provided to the Debtors during the Chapter 11 Cases. Epiq does not seek such relief lightly but rather as a necessary step after exhaustive efforts to obtain payment from the Debtors have failed. In fact, in the nearly one-year period since entry of the Agreed Fee Order, Epiq has made numerous demands for payment and, in the last several weeks, engaged in extensive, good faith discussions with the Debtors in an effort to avoid filing this Motion. Those

discussions, however, were unsuccessful, leaving Epiq with no other choice but to seek the relief in this Motion.[2]

8. Epiq submits that the relief requested herein is necessary and appropriate under the Bankruptcy Code and pursuant to the Court's equitable powers. The Debtors should <u>not</u> be permitted to seek chapter 11 relief, benefit from Epiq's services, prefer certain estate professionals by paying them substantial sums during and after the Chapter 11 Cases, all while completely violating their Court-ordered payment obligations to Epiq under the Agreed Fee Order.

## **BACKGROUND**

**A.     Debtors' Retention of Epiq**

9. On October 2, 2023, the Debtors filed the *Debtors' Emergency Application for Entry of Order Authorizing Debtors to Employ Epiq Corporate Restructuring, LLC as Notice, Claims, and Solicitation Agent, and Call Center Operator, as Such Services May be Necessary and Required, Effective September 22, 2023* [ECF No. 49] (the "<u>Employment Application</u>") seeking to retain Epiq as notice, claims and solicitation agent, and call center operator. *See* Employment Application at ¶ 43. The Debtors state in the Employment Application that:

> Epiq is an experienced and leading provider of administrative services in Chapter 11 cases, and, specifically, in providing the services contemplated hereunder in accordance with the Services Agreement. As provided in the Notice Motion and NOC/POC Motion, Epiq will (a) serve the forms of notice of commencement of case and proof of claim to all creditors and HBA Parties, (b) maintain a case website onto which Epiq will post pleadings filed in the case, (c) serve pleadings in accordance with the Notice Motion, and (d) establish and operate a "hotline" for the purpose of answering case-related calls, as may be requested.

*Id.* at ¶ 46.

---

[2] On July 14 and 31, 2025, respectively, the Debtors wired $15,000.00 to Epiq. The two payments totaling $30,000.00 represent approximately 5.7% of the total amount owed to Epiq under the Agreed Fee Order and less than one payment due under the Agreed Fee Order. There has been no indication that additional payments will be made by the Debtors nor has Epiq agreed to a proposal involving incremental payments of $15,000.00 on the Debtors' chosen timeline.

4

10. The Employment Application further states that "[t]he Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court." *Id.* at ¶ 48.

11. On October 6, 2023, the Court entered an order [ECF No. 63] (the "Employment Order") approving the Employment Application. The Employment Order provides that the fees and expenses incurred by Epiq pursuant to the Service Agreement (as defined in the Employment Application) shall be an administrative expense of the Debtors' estates. *See* Employment Order at ¶ 6. The Employment Order further grants the Debtors authority to compensate Epiq upon submission of invoices without further Court order. *See id.* at ¶ 7.

**B.    Dismissal of Chapter 11 Cases**

12. On March 12, 2024, the Office of the United States Trustee (the "U.S. Trustee") filed the *United States Trustee's Motion to Dismiss or Convert* [ECF No. 1009] seeking to dismiss or convert the Debtors' Chapter 11 Cases.

13. On May 20, 2024, nearly eight months after the Debtors commenced Chapter 11 Cases, the Debtors and U.S. Trustee submitted a stipulation [ECF No. 1462] whereby the Debtors consented to dismissal of the Chapter 11 Cases.

14. On May 24, 2024 (the "Dismissal Date"), the Court entered the *Order Dismissing Cases* [ECF No. 1523] (the "Dismissal Order") that, among other things, dismissed the Chapter 11 Cases without prejudice and set a deadline of twenty-one (21) days following entry of the Dismissal Order to file applications for administrative expenses under 11 U.S.C. § 503(b)(1)(A) and applications for compensation under 11 U.S.C. § 330. Pursuant to the Dismissal Order, the Court

5

retained jurisdiction to consider all applications for compensation and requests for administrative expenses.

C. **Agreed Fee Order**

15. On June 14, 2024, Epiq timely filed an application [ECF No. 1586] (the "Amended Application")[3] requesting payment of $616,557.19 for services rendered by Epiq from December 1, 2023 through May 31, 2024.

16. After engaging in discussions with the Debtors, Epiq agreed to reduce the amount sought under the Amended Application pursuant to an agreed order. Shortly thereafter, on August 23, 2024, the Court entered the Agreed Fee Order, awarding Epiq an administrative claim in the amount of $525,000.00 payable in 10 monthly installments of $52,500.00 per month. *See* ECF No. 1630. Paragraph 3 of the Agreed Fee Order provides that, "[t]he Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order."

17. Around the time of entry of the Agreed Fee Order, the Court also entered orders approving the fee applications of other estate professionals, each of which contained a provision providing for the Court's retention of jurisdiction in connection with matters relating to the fee orders. *See* ECF Nos. 1533, 1617-19, 1621, 1627, and 1633-34.

18. Pursuant to the Agreed Fee Order, the Debtors' first payment to Epiq of $52,500.00 was due on October 1, 2024. The Debtors failed to make that first payment and every subsequent payment as required under the Agreed Fee Order. Consequently, on February 24, 2025, Epiq filed a motion [ECF No. 1650] (the "Show Cause Motion") seeking entry of an order to show cause as to why the Debtors should not be held in contempt for failing to make any payments under the Agreed Fee Order.

---

[3] On May 22, 2024, Epiq filed *Epiq Corporate Restructuring, LLC's Motion for the Allowance and Payment of Section 503(b)(1)(A) Administrative Claim* [ECF No. 1513].

6

19.     Following a hearing on the Show Cause Motion held on April 16, 2025, the Court entered the *Order Granting Epiq Corporate Restructuring, LLC's Motion for Order to Show Cause* [ECF No. 1671] (the "Show Cause Order") that (i) authorized Epiq to submit a proposed final judgment in the amount of the then-outstanding balance under the Agreed Fee Order and (ii) required the Debtors to deliver to Epiq documents evidencing (a) fees and expenses incurred by the Debtors' professionals from the date of commencement of the Chapter 11 Cases through and including April 16, 2025 and (b) proof of all payments made by the Debtors to such professionals (collectively, the "Documents"). Additionally, the Court entered a final judgment against the Debtors on May 1, 2025 [ECF No. 1668] (the "Final Judgment"). In accordance with the Show Cause Order, the Final Judgment reflected the then-outstanding balance under the Agreed Fee Order of $367,500.00, representing the eight missed payments as of May 2025.

**D.     Inequitable Payments to Estate Professionals**

20.     On May 16 and 28, 2025, the Debtors provided certain of the Documents and a summary indicating that the Debtors' professionals have billed $9,415,946.89, and the Debtors have paid $6,202,293.08 to such professionals, "during and post bankruptcy" (the "Debtors' Fee Summary").[4]

21.     Based upon a review of the Documents, the following amounts have been paid to estate professionals:[5]

>    i.    Pursuant to the *Order Granting Final Fee Application of Seese, P.A., as Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses* [ECF No. 1533] (the "Seese Fee Order"), Seese, P.A.

---

[4]     The Debtors' Fee Summary does not provide specific information regarding the timing of payments to professionals. Further, the figures contained in the Debtors' Fee Summary may not accurately reflect the total amounts billed and paid to estate professionals.

[5]     The information included in this paragraph is based upon Epiq's review of the Documents produced by the Debtors and the Debtors' Fee Summary. Accordingly, actual amounts paid may differ from the amounts set forth herein.

("Seese") was awarded $567,601.57. The Seese Fee Order reflects that Seese was previously paid $421,067.17 during the Chapter 11 Cases.

The Debtors' Fee Summary indicates that Seese billed $708,533.67 "during and post bankruptcy" but was paid $709,472.67, reflecting a potential overpayment of $939.00.

Based upon a review of the Documents, the Debtors made the following payments to Seese totaling $704,472.67:

- $10,000.00 (9.1.23)
- $108,690.00 (9.11.23)
- $42,262.50 (9.15.23)
- $53,878.00 (9.19.23)
- $28,665.00 (9.22.23)
- $14,548.47 (12.6.23)
- $59,931.80 (12.27.23)
- $62,311.90 (1.26.24)
- $43,064.40 (2.27.24)
- $15,645.00 (2.28.24)
- $61,054.30 (4.2.24)
- $64,421.30 (5.8.24)
- $50,000.00 (6.11.24)
- $20,000.00 (7.9.24)
- $20,000.00 (8.2.24)
- $50,000.00 (3.3.25)

ii. Pursuant to the *Order Approving Final Fee Application of Aaron A. Wernick, Esq. and Wernick Law, PLLC, Attorneys for the Chapter 11 Debtors* [ECF No. 1617], Wernick Law, PLLC ("Wernick Law") was awarded $102,241.42.

The Debtors' Fee Summary indicates that Wernick Law billed $143,392.92 and was paid $161,600.00 "during and post bankruptcy."

Based upon a review of the Documents, the Debtors made the following payments to Wernick Law totaling $161,600.00:

- $75,000.00 (7.15.24)
- $80,000.00 (8.2.24)
- $6,600.00 (12.6.24)

8

iii. Pursuant to the *Order Granting Final Fee Application of Saul Ewing LLP, as Special Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses* [ECF No. 1627], Saul Ewing LLP ("Saul Ewing") was awarded $3,621,816.29.

The Debtors' Fee Summary indicates that Saul Ewing billed $6,929,489.54 and was paid $4,509,682.09 "during and post bankruptcy."

Based upon a review of the Documents, the Debtors made the following payments to Saul Ewing totaling $4,564,589.49:

- $50,000.00 (10.31.23)
- $98,657.50 (12.28.23)
- $50,000.00 (1.5.24)
- $221,588.36 (1.10.24)
- $345,923.65 (2.1.24)
- $360,232.23 (3.1.24)
- $23,298.35 (3.4.24)
- $103,517.20 (3.21.24)
- $50,000.00 (3.25.24)
- $64,556.97 (4.4.24)
- $207,024.21 (4.4.24)
- $249,060.32 (4.17.24)
- $100,000.00 (4.25.24)
- $79,994.30 (5.2.24)
- $139,064.16 (5.6.24)
- $180,721.26 (5.22.24)
- $109,221.93 (5.31.24)
- $125,000.00 (6.5.24)
- $100,000.00 (6.13.24)
- $32,000.00 (6.21.24)
- $100,000.00 (6.28.24)
- $100,000.00 (7.9.24)
- $100,000.00 (7.17.24)
- $100,337.67 (7.23.24)
- $100,000.00 (7.30.24)
- $100,000.00 (8.13.24)
- $100,000.00 (8.23.24)
- $100,000.00 (8.29.24)
- $31,391.38 (9.17.24)
- $100,000.00 (9.17.24)
- $100,000.00 (10.3.24)
- $100,000.00 (10.15.24)
- $100,000.00 (10.30.24)
- $100,000.00 (10.31.24)

9

        • $18,000.00 (10.31.24)
        • $250,000.00 (11.27.24)
        • $250,000.00 (12.30.24)
        • $25,000.00 (3.12.25)

iv.    Pursuant to the *Agreed Order Granting Final Application for Allowance of Fees and Reimbrsement [sic] of Expenses of Boies Schiller Flexner LLP, as Counsel to the Official Committee of Home Benefits Agreement Holders for the Period of Retention from November 23, 2023 through May 31, 2024* [ECF No. 1634], Boies Schiller Flexner LLP ("Boies Schiller") was awarded $338,580.38, to be paid in monthly installments of $33,858.04 per month.

According to the Debtors' Fee Summary, Boies Schiller billed $538,580.38 and was paid $249,000.00 "during and post bankruptcy."

Based upon a review of the Documents, the Debtors made the following payments to Boies Schiller totaling $249,000.00:

        • $50,000.00 (2.20.24)
        • $50,000.00 (3.25.24)
        • $50,000.00 (4.4.24)
        • $50,000.00 (5.20.24)
        • $16,500.00 (11.8.24)
        • $16,500.00 (12.3.24)
        • $16,000.00 (2.25.25)

v.    Pursuant to the *Order Approving Final Fee Application of Joseph J. Luzinski, Sr. and Development Specialists, Inc., Expert Witness for the Chapter 11 Debtors* [ECF No. 1619], Development Specialists, Inc. ("DSI") was awarded a total of $93,277.65, less the application of a post-petition retainer of $50,000.00.

According to the Debtors' Fee Summary, DSI billed $93,277.65 and was paid $64,425.00 "during and post bankruptcy."

Based upon a review of the Documents, the Debtors made the following payments to DSI totaling $64,425.00:

        • $50,000.00 (1.26.24)
        • $14,425.00 (7.17.24)

    vi.    Pursuant to the *Order Approving Final Fee Application of Jordan C. May, Esq. and Frascona, Joiner, Goodman and Greenstein, P.C. as Special Counsel to the Debtors and Debtors-in-Possession* [ECF No. 1618], Frascona, Joiner, Goodman and Greenstein, P.C. ("Frascona") was awarded a total of $91,579.63, less payments made of $82,587.13.

According to the Debtors' Fee Summary, Frascona billed $134,859.61 and was paid $125,914.61 "during and post bankruptcy."

The Documents indicate that the Debtors made the following payments to Frascona totaling $121,423.34:[6]

- $17,455.41 (1.29.24)
- $380.32 (2.5.24)
- $41,899.80 (3.4.24)
- $22,358.81 (5.30.24)
- $8,280.00 (7.24.24)
- $5,527.50 (9.18.24)
- $9,274.50 (12.4.24)
- $4,220.00 (1.31.25)
- $12,027.00 (3.17.25)

    vii.    According to the Debtors' Fee Summary, Carpenter Lipps LLP ("Carpenter") was paid $125,115.85, but there is no corresponding fee order approving such payment.[7] The Debtors' Fee Summary also indicates that Carpenter billed $177,709.25 "during and post bankruptcy."

The Documents indicate that the Debtors made payments to Carpenter both before and after the Dismissal Date totaling $125,115.85, as follows:

- $4,525.60 (3.1.24)
- $41,289.85 (5.2.24)
- $27,771.20 (6.20.24)
- $23,371.00 (6.28.24)
- $18,158.20 (7.23.24)
- $10,000.00 (12.12.24)

---

[6] The Debtors' Fee Summary indicates that Frascona was paid $125,914.61, however, the Debtors' Documents reflect payments to Frascona totaling $121,423.34.

[7] Any amounts paid to Carpenter during the Chapter 11 Cases without Court approval should be disgorged. *See* 11 U.S.C. § 330; *In re Ford*, 446 B.R. 550, 551-52 (Bankr. M.D. Fla. 2011) (noting that professionals must file fee applications to be compensated for services in chapter 11 cases).

11

    viii.    According to the Debtors' Fee Summary, Hermann & Govin billed $11,750.00 and was paid $9,590.00 "during and post bankruptcy", however, there is no retention order approving the firm's employment on the docket.

The Documents indicate that the Debtors made the following payments to Hermann & Govin totaling $12,460.00:

- $2,870.00 (9.18.23)
- $6,020.00 (6.5.24)
- $3,570.00 (8.19.24)

    ix.    Pursuant to the *Order Granting Final Fee Application of Walter E. Brock, Jr. and Young Moore and Henderson, P.A. as Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses* [ECF No. 1621], Walter E. Brock, Jr. and Young Moore and Henderson, P.A. ("Young Moore") was awarded $432,686.35, less the amount of $261,015.99 previously paid, for a total of $171,670.36, which may be paid "immediately."

The Debtors' Fee Summary does not list Young Moore, however, the Debtors' Documents indicate that Young Moore received the following payments totaling $394,275.85:

- $50,000.00 (1.5.24)
- $23,298.35 (3.4.24)
- $64,556.97 (4.4.24)
- $79,994.30 (5.3.24)
- $42,496.37 (6.3.24)
- $32,000.00 (6.21.24)
- $45,538.48 (7.12.24)
- $31,391.38 (9.17.24)
- $25,000.00 (3.12.25)

    x.    Pursuant to the *Agreed Order Granting Final Application for Allowance of Fees and Reimbursement of Expenses of Kroll Associates, Inc., as Financial Advisor to the Official Committee of Home Benefits Agreement Holders for the Period of Retention from February through May 31, 2024* [ECF No. 1633], Kroll Associates, Inc. ("Kroll") was awarded $34,415.00.

The Debtors' Fee Summary does not list Kroll, and it appears that Kroll never received payment. Accordingly, Kroll and Epiq appear to be the only two estate professionals who did not receive payment on account of final fee orders approved by this Court.[8]

---

[8] The remaining professionals in the Debtors' Fee Summary appear to have provided services after the Dismissal Date. Of these professionals, however, Foresight Financial CPA Firm PLLC ("Foresight") issued one invoice (May 2024) that may be on account of services performed while the Debtors were still in chapter 11. According to the Debtors' Fee Summary, Foresight billed $41,650.00 and was paid in full post-Dismissal Date. Any amounts paid without Court approval for chapter 11 services should be disgorged.

12

22. The Documents and foregoing summaries demonstrate that, while the Debtors have paid certain professionals in full with respect to their final fee orders, the Debtors have <u>not</u> made any payments to Epiq required under the Agreed Fee Order despite numerous demands for payment. Rather, on July 14 and 31, 2025 – after not making a single payment for nearly one year and only after being advised of Epiq's intent to the file this Motion – the Debtors wired Epiq two payments of $15,000.00, representing less than 6% of the total amount owed to Epiq. There has been no indication that the Debtors intend to pay Epiq the remaining amount owed nor has Epiq agreed to any proposal involving incremental payments of $15,000.00 on the Debtors' chosen timeline. As a result, the Debtors owe $495,000.00 to Epiq under the Agreed Fee Order.

## **RELIEF REQUESTED**

23. By this Motion, Epiq respectfully requests that the Court enter an order (i) directing the equitable apportionment of the total amount of fees and expenses paid to estate professionals, and (ii) granting such other and further relief as the Court deems just and proper.

## **ARGUMENT**

24. As evidenced by Debtors' Fee Summary and Documents, the Debtors have a pattern and practice of paying certain preferred estate professionals over others during and following the Chapter 11 Cases, resulting in certain professionals receiving payment in full and leaving others, including Epiq, woefully underpaid. This result is inequitable and inconsistent with the policy underlying the priority treatment of administrative claimants, particularly because Epiq incurred approximately $325,000.00 in hard costs on behalf of the Debtors to ensure they complied with the Bankruptcy Code's noticing requirements at the direction of the Debtors' counsel.

25. It is generally known to professionals retained by debtors in chapter 11 cases that compensation for services rendered to the estate are administrative expenses under section 503(b)(2) of the Bankruptcy Code. Except with respect to trust funds, there is no internal priority scheme for

13

administrative claimants—they are presumed to be paid in full. In chapter 11, for example, debtors are simply required to pay the allowed amount of such claims in full on the effective date of any confirmed plan. *See* 11 U.S.C. §§ 507(a)(2), 1129(a)(9)(A). This policy underscores the importance of an administrative claimant's services for the estate and demonstrates an intent to ensure such professionals are paid for their services.

26.     Accordingly, administrative expenses are entitled to equal treatment upon the conclusion of a chapter 11 case. *See In re Barron*, 73 B.R. 812, 813-14 (Bankr. S.D. Cal. 1987). Courts have also observed that "if some administrative expenses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata." *See, e.g., In re Kaiser Steel Corp.*, 74 B.R. 885, 891 (Bankr. D. Colo. 1987).

27.     Courts have reasoned that equitable apportionment of fees is appropriate to ensure that administrative expenses for professional fees are paid equally under applicable provisions of the Bankruptcy Code. *See In re Channel Master Holdings, Inc.*, 309 B.R. 855, 860 (Bankr. D. Del. 2004) (noting that a court has inherent power to direct disgorgement by any professional and redistribute disgorged fees among all professionals in order to assure that none receives more than its pro rata share); *In re World Waste Servs., Inc.*, 345 B.R. 810, 816 (Bankr. E.D. Mich. 2006) (reasoning that disgorgement is "theoretically permitted, and likely required" as a remedy in an administratively insolvent case to ensure administrative creditors are treated equally). Moreover, professionals "who voluntarily undertake the representation of parties in a reorganization and expect their fees to be paid, if at all, from the estate, assume the risk of non-payment or even disgorgement of interim fees, if the case fails." *In re Wilson-Seafresh*, Inc., 263 B.R. 624, 632 (Bankr. N.D. Fla. 2001).

14

28. Here, the fact that the Chapter 11 Cases have been dismissed does not impact the Court's authority to review professional fees and direct disgorgement when warranted. *See In re New River Dry Dock, Inc.*, 451 B.R. 586 (Bankr. S.D. Fla. 2011) (holding that disgorgement of fees paid to self-dealing broker was warranted post-confirmation based upon broker's failure to disclose conflict); *In re Lang*, 642 B.R. 76, 83 (M.D. Fla. 2022) (noting that the court retains jurisdiction to consider the disgorgement of attorney fees after the voluntary dismissal of the bankruptcy case).

29. Additionally, the Agreed Fee Order and all other fee orders expressly provide that the Court retains jurisdiction to address disputes with respect to the relief granted therein. Therefore, the Court has authority to direct equitable apportionment as it relates to fees and expenses awarded to estate professionals.

30. Moreover, the Court may award relief that is equitable in nature, provided that the party seeking equitable relief acted in good faith. *See In re Skolnick*, 363 B.R. 626, 627-28 (Bankr. S.D. Fla. 2007) (citing *Pepper v. Litton*, 308 U.S. 295 (1939)). Here, Epiq honored its obligations to the Debtors by providing services that were critical to the administration of the Chapter 11 Cases. After the Debtors ignored their payment obligations to Epiq during the Chapter 11 Cases, they led Epiq and this Court to believe that they would satisfy the amounts owed by making installment payments in accordance with the Agreed Fee Order. The Debtors, however, failed to make a single payment as required under the Agreed Fee Order. Further, the Debtors' Fee Summary and Documents demonstrate that the Debtors have preferred certain estate professionals by making substantial payments to those professionals while disregarding their payment obligations to Epiq, a similarly situated administrative creditor currently owed $495,000.00 under the Agreed Fee Order.

31. For these reasons, Epiq submits that an equitable apportionment of the fees and expenses paid to estate professionals is warranted. The Debtors' Fee Summary indicates that the Debtors paid over $6.2 million to professionals (nearly $400,000.00 more than this Court awarded)

15

throughout and following dismissal of the Chapter 11 Cases. Certain estate professionals have been paid in full, while others, including Epiq, have been woefully underpaid. Absent immediate payment from the Debtors of all amounts due under the Agreed Fee Order, Epiq submits that it is necessary and appropriate for the Court to direct equitable apportionment of amounts paid to estate professionals to ensure the fair and equal treatment of administrative creditors as required under the Bankruptcy Code.[9]

[*Remainder of page intentionally blank*]

---

[9] Contemporaneously with the filing of this Motion, Epiq is filing *Epiq Corporate Restructuring, LLC's Ex Parte Motion for Entry of an Order (I) Authorizing the Filing of Its Motion for Equitable Apportionment of Professional Fees and Expenses Under Seal and (II) Granting Related Relief* (the "Seal Motion"). Upon entry of an order granting the Seal Motion, Epiq will promptly serve a copy of this Motion pursuant to the procedures set forth in the Seal Motion.

**WHEREFORE**, Epiq respectfully requests that this Court enter an order (i) directing the equitable apportionment of the fees and expenses paid to estate professionals and (ii) granting such other and further relief as the Court deems just and proper.

Dated: August 21, 2025  
Miami, Florida

Respectfully submitted,

**DLA PIPER LLP (US)**

 /s/ Rachel Nanes  
Rachel Nanes (FL Bar No. 85167)  
200 South Biscayne Boulevard, Suite 2500  
Miami, Florida 33131  
Telephone: (305) 423-8500 (Main)  
Telephone: (305) 423-8563 (Direct)  
Facsimile: (305) 675-8206  
Email: rachel.nanes@us.dlapiper.com

*Counsel to Epiq Corporate Restructuring, LLC*